### THE A. P. SKIDMORE.

### THE CITY OF LAWRENCE.

#### (District Court, S. D. New York. May 28, 1901.)

1. COLLISION—FOG—LOOKOUTS.
    Where a tug entering a harbor in a thick fog in the nighttime has no lookouts on the bows of two barges alongside, which run ahead of her some 30 feet, it constitutes negligence.

2. SAME—ANCHORAGE GROUND.
    A steamship anchoring in New York harbor outside of the anchorage grounds, where the depth of water was so great as to indicate that such anchorage ground was considerably nearer the shore, is guilty of negligence, so as to be equally liable with a tug colliding with it in a foggy night.

In Admiralty.

Carpenter & Park and Mr. Symmers, for libelants.
Benedict & Benedict, for the A. P. Skidmore.
Wing, Putnam & Burlingham, for the City of Lawrence.

BROWN, District Judge. I was at first disposed to regard this collision as the result of inevitable accident, but upon the argument of counsel and closer perusal of the testimony, I am satisfied that both boats should be held in fault.

The Skidmore, in my judgment, could not have been as attentive as she ought to have been either to the bell sounded on the City of Lawrence, or to the ferry bells on the shore. The evidence of the City of Lawrence leaves no doubt that these shore bells were easily heard where she was. They should have been equally heard by the Skidmore approaching her. The steamer's bell ought also to have been heard earlier, and if it was mistaken through the slowness of the stroke for shore bells on the New York shore, that was abundant reason for the Skidmore to proceed much further to the eastward. Having been at the time the captain was called within 150 feet of the Brooklyn shore, as the mate told him, the tug could not have got so far toward the New York shore as the City of Lawrence lay without directing her course considerably across the river. This is not reconcilable with a prudent course if the captain were all the time aiming to make Newtown creek.

I think the Skidmore is further to blame for not having lookouts on the bows of the two barges alongside, which ran ahead of her some 30 feet, that is from 45 to 50 feet ahead of the pilot house. See The Patria (D. C.) 92 Fed. 411, affirmed in (C. C. A.) 107 Fed. 157. In so thick fog in the nighttime no excuses can be accepted for not having a good lookout way forward.

The City of Lawrence is I think to blame for anchoring where she did. The testimony is quite contradictory as to the place of her anchorage. Her captain states that after she swung to the ebb tide, the Nineteenth street buoy was directly astern. Several of the tug's witnesses testify that on going out to ascertain her position while she was in the flood tide, they found her considerably to the eastward of the buoy; but I think the captain's own testimony is conclusive that his position was considerably to the eastward of that buoy, and therefore to the eastward of the anchorage grounds. He testifies that in sounding he found seven fathoms of water, and no such depth is found except considerably to the eastward of the buoy. This fact itself was sufficient to indicate to him that the anchorage ground was considerably nearer the New York shore and that there was still abundant room for him to go there without danger. The Ailsa (D. C.) 76 Fed. 868.

For these reasons I think both are to blame, and the libelants are entitled to a decree against both, accordingly, with costs.