### THE A. P. SKIDMORE.

### THE CITY OF LAWRENCE.

(Circuit Court of Appeals, Second Circuit. April 22, 1902.)

#### No. 122.

COLLISION—STEAMER ANCHORED IN FOG—MISTAKE AS TO LOCATION.

A steamer encountering a dense fog in the night in East river sought the nearest anchorage ground, where she anchored, taking all due precautions against collisions by means of lights and signals. The master was competent, and familiar with the locality, but the outer limit of the grounds was marked only by a buoy at either end, which could not be seen in the fog, and by an error he anchored somewhat outside the limit. Held, that under the circumstances the error was excusable, and did not constitute a fault contributing to a collision with the tow of a passing tug, which would not have occurred if the tug had been properly and carefully navigated.

Appeal from the District Court of the United States for the Southern District of New York.

Robert D. Benedict, for appellant the Skidmore.

Chas. C. Burlingham, for appellant the City of Lawrence.

James K. Symmers, for appellees.

Before WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge. We are satisfied that the evidence warranted the court below in holding the steam tug in fault for the collision which took place between one of her tows and the steamship City of Lawrence, and we agree fully with the findings of fact and law expressed in the opinion of the district judge. We cannot, however, adopt the conclusion of the district judge that the City of Lawrence was also in fault. When the fog which the City of Lawrence encountered while she was proceeding up the East river became so dense that it was unsafe to continue, her master immediately sought the nearest and safest place to come to anchor,—the anchorage ground off Twenty-Third street, which extends along the westward shore to the middle of the river, and begins a little distance above the buoy off Nineteenth street. Supposing she had reached the proper place, she dropped an-

chor, and thereafter until the collision all the duties incumbent upon a vessel at anchor in a fog were observed on board the steamship. Careful watch and bright anchor lights were maintained at her bow and stern; and at intervals of not more than one minute signals, consisting of three strokes of her large bell, were regularly given. The collision took place about 3:40 a. m., after she had been lying at anchor about two hours and a half, the fog not having diminished in the meantime. In fact she was anchored somewhat outside the proper limits, and the question as to her responsibility is whether those in charge of her navigation were negligent in this respect, or whether the error of locality was excusable under the circumstances of the case. Her master was a man of suitable experience and capacity, was familiar with the locality, and used his best endeavors and judgment to place his vessel where she could stay with the least risk to herself, and without responsibility in case of collision with another vessel. The eastward line of the anchorage ground was defined only by buoys at either end, and the buoys could not be discovered in the fog. He was obliged to rely on the indications given by the bells of the Twenty-Third street ferry and upon the soundings taken at the bow of the vessel to ascertain the locality. It is said that the soundings should have suggested doubt whether his vessel was not further to the eastward than the eastward limits of the anchorage ground. They showed something less than seven fathoms of water, but the depth of water within the anchorage ground varies, and at places well within the limits, as well as near where the vessel came to anchor, is more as well as less than seven fathoms. We cannot discover that he omitted any precaution which a vigilant master should have exercised before casting anchor. With so dense a fog, in a locality frequented by so many vessels, it was hazardous for the steamship to proceed at all, and we are not prepared to say that it was not good judgment on the part of her master to bring her to anchor at the earliest practicable moment after he had satisfied himself that he had reached the anchorage ground. It is easy to say, after an accident, that something could have been done to lessen the possibility of one. In this case the question is whether at the time and under the circumstances reasonable prudence was observed. In a case like the present the court should put itself in the position of the master at the time, and, unless it is satisfied that he did not exercise the discretion consistent with sound judgment, should refuse to condemn his mistake as a fault. Especially should the court be slow to hold such an error of judgment a fault contributory to a collision when there need have been no collision if the other and moving vessel had been cautiously and vigilantly navigated.

The decree is reversed, with costs to the owner of the City of Lawrence, and with instructions to the court below to decree for the whole loss, with costs against the steam tug Skidmore.