### THE NEWBURGH.

(District Court, S. D. New York. July 3, 1903.)

1. COLLISION—STEAMER AND ANCHORED VESSEL—EXCESSIVE SPEED IN FOG—ANCHORING IN CHANNEL.

A steamer which came into collision with an anchored lighter in the Hudson river in a dense fog, while proceeding at a speed of eight miles an hour, *held* in fault for the collision because of excessive speed; the lighter also *held* in fault for deliberately anchoring in the channel during the fog when in the vicinity of the anchorage grounds, which could easily have been reached.

In Admiralty. Suits for collision.

Carpenter, Park & Symmers, for libellants.

Boardman, Platt & Soley and Wing, Putnam & Burlingham, for claimant.

ADAMS, District Judge. A libel was filed by Warren A. Davis, an engineer on the steam lighter Clifford, against the steam propeller Newburgh to recover damages for personal injuries suffered and personal effects lost by reason of a collision, which occurred on

¶ 1. Collision rules as to speed of steamers in fog, see note to The Niagara, 28 C. C. A. 532.

the Hudson River, about opposite 104th Street, Manhattan, about 9.30 o'clock A. M., on the 29th of December, 1901. A libel was also filed by Eugene S. Belden, managing owner of the Clifford and of the lighter Christine, which was in tow of the Clifford, on behalf of the owners to recover injuries suffered by reason of damages to the Clifford and the Christine, and on behalf of the crew of the Clifford, who lost some personal effects. Answers were filed by the claimant of the Newburgh and upon the issues raised, testimony was taken to be used in both actions.

It appears that the Clifford, with the Christine on a hawser, was bound from Hammond's Flats to 133rd Street, Hudson River, to load. After rounding the Battery, a fog shut down, which became dense, and the Clifford after proceeding up the river to the vicinity of 90th Street, Manhattan, took the Christine on her port side and anchored. The tide was flood. The fog was so thick then that the master could not determine just where in the river the vessels were, but it is conceded by the claimant of the Clifford that they were somewhat to the eastward of the anchorage grounds, and it is claimed on her behalf, that at the time of the collision, she was about opposite 100th Street. Before the vessels swung to the Clifford's anchor, and while heading across the channel, the Clifford was struck on the starboard side by the Newburgh. Immediately upon letting the anchor go, the Clifford had commenced ringing her fog bell, and continued ringing it at intervals of less than a minute each, for several minutes before the collision. The blow was a severe one and the Clifford sank from its effects in a few minutes.

The Newburgh, a passenger and freight steamer, bound from Manhattan to Newburgh on the Hudson, left her wharf at foot of Franklin Street, about 9 o'clock. According to her story, it was foggy when she left and she proceeded under one bell until about opposite 23rd Street, Manhattan, when the fog lightened up and her engine was hooked up to full speed, which was about 16 miles per hour. When the vicinity of 60th Street was reached, the fog shut down again and the speed was reduced to one-half, or about 8 miles per hour. Shortly afterwards, the bell of the Clifford was heard a little on the starboard bow of the Newburgh and her course, which was about up the centre of the river, was changed ½ point to port, but her speed was maintained. Suddenly the Clifford appeared ahead, less than 200 feet away, heading to the eastward and the Newburgh stopped and reversed her engine but she could not avoid the Clifford nor materially reduce her headway and the severe collision resulted.

Upon the facts of the collision, both vessels were in fault: the Clifford for anchoring in the channel, when the anchorage grounds were available, and the Newburgh for navigating at an immoderate speed in a fog.

It is urged on behalf of the Clifford, that as the Newburgh was obviously in fault for excessive speed, the Clifford should be excused for not being on the anchorage grounds, and The A. P. Skidmore and The City of Lawrence, 115 Fed. 791, 53 C. C. A. 287, is cited in support of the contention. That was a case of collision where the City of Lawrence, at anchor just outside of the anchorage grounds

in the East River, was run into by the Skidmore, which was a moving vessel and held in fault for the absence of lookouts. The City of Lawrence was also held in this court by Judge Brown for not being on anchorage grounds—108 Fed. 972—but was relieved on appeal, as the evidence showed that her pilot did everything he could in the fog to find the anchorage grounds. The Court said:

"With so dense a fog, in a locality frequented by so many vessels, it was hazardous for the steamship to proceed at all, and we are not prepared to say that it was not good judgment on the part of the master to bring her to anchor at the earliest practicable moment after he had satisfied himself that he had reached the anchorage ground."

This case is quite different. The master here deliberately anchored his vessel in the channel, when in the vicinity of the anchorage grounds, which he could easily have reached, because, he said:

"I didn't think it safe to get on any anchorage ground there—it was a good place to get in collision."

In other words, the pilot substituted his judgment for the mandate of the law, with the result of contributing to a collision, and the vessel must be held.

The evidence indicates that the Newburgh was going much faster than 8 miles per hour but that is more than sufficient to condemn her. The fog was so dense that a vessel could not be seen at a greater distance than 200 feet and yet, having knowledge of there being a vessel a short distance ahead, the Newburgh proceeded without any precaution other than slightly changing her heading, with the result of bringing about a dangerous collision. It was no excuse for her that the Clifford was not on the anchorage grounds. The latter from the beginning bore a trifle on the Newburgh's starboard bow, while the anchorage grounds were known to be on her port side. She was therefore navigating with regard to a vessel anchored in the channel and bound to take precautions accordingly, in order to escape liability herself.

The libellants are entitled to recover half damages against the Newburgh. Decree accordingly, with an order of reference.