## THE SOCONY NO. 9.
## THE JOYCE CARD.
## THE PAUL CARD.
### No. 138.

Circuit Court of Appeals, Second Circuit.

Dec. 17, 1934.

Macklin, Brown, Lenahan & Speer, of New York City (Paul Speer, of New York City, of counsel), for The Socony No. 9.

Foley & Martin, of New York City (James A. Martin and John R. Stewart, both of New York City, of counsel), for The Paul Card and The Joyce Card.

Chauncey I. Clark, of New York City, for libelant.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

The cause of suit here on appeal arose out of a collision on March 23, 1929, in a dense fog at the mouth of the Kill van Kull, close beside the St. George Ferry racks. The injured vessel, the Conemaugh, originally a freighter built during the war, but later converted into a tanker, had been at Bayonne and wished to be towed out through the Kill to the Upper Bay. For this purpose, being without steam, she hired the two Card tugs to take her out, one made fast on either side. By the time the flotilla rounded Bergen Point into the Kill the weather had begun to thicken, and when the vessels got to Constable Hook, the visibility was not more than sixty or seventy feet. It was about low water and the four fathom line juts southwards from Robbins Reef Light, in places for half a mile, leaving an available channel at times of only about a quarter of a mile in width for a vessel which, like the Conemaugh, drew twenty-three feet. Faced with the alternative of groping their way forward, guided only by the gong upon the ferry rack, the tugs decided to anchor where they were. The exact place it is now impossible to learn for the testimony differs; the flotilla was headed in a general southeasterly direction, very close to the west end of the racks and about four hundred feet out from the Staten Island shore; it was unquestionably in the fairway, though for vessels passing through the Kill probably in no worse position than anywhere else, unless it could have got into a slip. Having anchored, the Conemaugh began to sound her bell at least every minute, as prescribed by Article 15 subdivision (d) of the statute (33 USCA § 191 [d]). She had been equipped with an unusually large one, fifteen inches high by over twelve in diameter; shipped when she was intended for the high seas and much larger than the tugs'. These continued to lie alongside with their sterns about abeam of the tanker's, and they did not sound their bells. The tug Socony No. Nine was coming up from Tompkinsville, feeling her way in the fog along the Staten Island shore. She heard a bell which was probably the Conemaugh's, but she was moving at too high a speed; so the judge found, and she does not now challenge it. Not stopping in season, she struck the Conemaugh's port bow about thirty feet abaft her stem; missing the port tug which was too short to be struck. The judge exonerated both tugs and tow, and held the Socony for full damages. Her claimant appeals, not disputing the findings of fault against her, or the ex-

oneration of the tow, but charging the tugs with fault for anchoring in a foul berth and for failing to sound their own bells to supplement the Conemaugh's.

It is quite true that the general duty of a vessel not to anchor in a fairway (section 409, title 33, U. S. Code, 33 USCA § 409), exists in a fog as well as at any other time. La Bourgogne, 86 F. 475 (C. C. A. 2); The Persian, 181 F. 439 (C. C. A. 2). But like most duties it is not absolute; she may have an interest which will excuse her; for example, the fog may be so dense, the quarters so close, and a safe berth so difficult and dangerous to reach, that the balance of advantage to all concerned makes it best to anchor where she is. In the case at bar it was theoretically possible for the tugs to try for some Staten Island slip nearby. When questioned the master of the Joyce Card, who was in charge, would only answer that "with that draft of water we can't go into every pier," and that it seemed safer for his own vessel to stay where he was. That was not a very convincing excuse, and yet we are disposed to accept his judgment made at the time, under the doctrine of The A. P. Skidmore, 115 F. 791 (C. C. A. 2), The City of Norfolk, 266 F. 641, 645 (C. C. A. 4), and The Northern Queen (D. C.) 117 F. 906. It was not an easy thing in so dense a fog to find a berth for a ship two hundred and fifty feet long; the first one may try for may be too full, and to peer about till another is found is a dangerous matter. No doubt the actual place selected, so close to the ferry slips, was bad, and perhaps if the ferry which did nearly hit the tanker while she lay there, had actually done so, much might have been said for the tugs' liability. But the nearness to the racks no more obstructed the Socony than if the tanker had anchored in the fairway further to the west; nor will we require of the tugs that they should have tried to make the anchorage off Robbins Reef. True, there were spots there where the Conemaugh could lie; but how were they to get her there? She could not safely cross the four fathom line and that meant that they must navigate by the ferry gong and the Robbins Reef siren for at least half a mile, across the path of oncoming ferries. That does not seem to us to have been a very practicable expedient. More might be said for crossing the mouths of the ferry slips in search of the Tompkinsville anchorage; it too was a possibility, but it would have been a dangerous course; had any collision happened the tugs would at once have been challenged for trying to poke about in such weather and in such crowded waters. The choice was doubtful whatever it was, and there is no such clear weight against the master's judgment, made on the spot, as to charge his vessels.

Indeed the blunder, if it was a blunder, is not the gravamen of the appeal; it is the failure of the tugs to ring their bells. The Conemaugh did not fail in her duty; she rang lustily, and she was the vessel struck. But the argument is that the tugs were at fault, not for failing to protect themselves, for they were not hit, but for failing to add their own bells to protect their tow. The rule does not so read; it seems to demand a signal solely for the sake of the vessel that gives it. Moreover, it cannot be the duty of a tug at all times to ring for its tow. For instance, if the vessels are strung out on a hawser, it can add nothing to the protection of one of them, perhaps a thousand feet away, which is ringing its own bell, to have the tug ring too. The putative duty can only be when all are in a huddle. Perhaps the added din may then have an advantage, but the rule does not even remotely intimate that a tug owes such a duty. The statute has fixed the minimum, five seconds ringing every minute; and the argument adds more, if the tug chances to stand by; though certainly she is scathless if she leaves altogether. On principle the doctrine has nothing to commend it.

No decision goes so far; those that are thought to do so are clearly distinguishable. In The Raleigh (C. C.) 44 F. 781, Judge Wallace held a tug, because its helper at the end of a tow some eight hundred feet long, did not give fog signals, when the whole flotilla was at anchor. The boat struck was in the first tier, and had failed to give any signals, having no apparatus. The decree below which held the tug and the colliding vessel for full damages was reversed, and the libellant was given half damages because of its default. The liability of the tug was based upon her failure to require her helper to give any signal, in view of the tow's inability to do so. The Whitney (D. C.) 77 F. 1001. All the case stands for is that when the tow has no signal, the tug is liable for failing to give the best substitute possible; it certainly does not suggest that when the tow is giving the statutory signal, the tug must supplement it. Tugs under way which give the required signals are not for example liable for failing to give more, when their tow is not itself in default. The City of New York, 49 F. 956 (C. C. A. 2); Hughes v. Pennsylvania R. Co. (D. C.) 93 F. 510; Id., 113 F. 925 (C. C. A. 2). In New York, etc., Co. v. Cornell Steamboat Co.,

193 F. 380, this court affirmed a ruling of Judge Hough holding a tug because her helper lay by all night in a fog while neither she, nor the flotilla, moored to a pier-end, gave any signals; that is no more than The Raleigh. The Walter Franks, 299 F. 319 (C. C. A. 2), has no bearing on the question; the tug was not present at the collision at all. The upshot appears to be no more than that in this circuit we have a rule of our own making, that if the tow does not give the required signal when at anchor or the like, the tug is responsible for her failure but may excuse herself by a substitute of some kind. The Conemaugh was doing her full duty, and the tugs needed to add nothing except perhaps for their own safety.

Decree affirmed.