### THE WILLIAM C. ATWATER.

### THE PERTH AMBOY NO. 2.

### McLAIN LINE, Inc., v. FALL RIVER NAV. CO.

### No. 102.

Circuit Court of Appeals, Second Circuit.
March 4, 1940.

On Petition for Rehearing
March 26, 1940.

Before SWAN, AUGUSTUS N. HAND, and PATTERSON, Circuit Judges.

Bingham, Englar, Jones & Houston, of New York City (Leonard J. Matteson and Richard F. Shaw, both of New York City, of counsel), for appellant Fall River Nav. Co.

Hagen & Eidenbach, of New York City (Henry C. Eidenbach and John S. Bull, both of New York City, of counsel), for appellees Perth Amboy No. 2, Fred B. Dalzell and Tice Towing Line.

Carl F. Vander Clute, of New York City, for libelants-appellees McLain Line, Inc., Dwyer Lighterage Inc., Harold L. Valentine, Inc., and Bartle J. Daly, Jr.

AUGUSTUS N. HAND, Circuit Judge.

On February 17, 1937, the S. S. Atwater was in collision with several of twenty-nine barges which were towed by the tug Perth Amboy No. 2. Damage resulted both to seven of the barges and to the Atwater. The collision occurred while the Atwater was at anchor in the main ship channel of the Upper Bay of New York Harbor, a short distance south of the Statue of Liberty. The owners of the damaged barges filed a libel against the Fall River Navigation Company which owned the Atwater and the tug Perth Amboy No. 2 which had the barges in tow. The owner of the Atwater impleaded Fred B. Dalzell, the managing owner of the tug and her helper tugs, and Tice Towing Company, the operator. The Fall River Navigation Company likewise filed a libel against the Perth Amboy No. 2 and Fred B. Dalzell, the managing owner of the tug and her helper tugs, and Tice Towing Line, the operator. The owner of the Atwater was found by the trial court to be solely liable for the damages arising from the collision because she had negligently obstructed the navigation of the tow by anchoring in a navigable channel and had not maintained proper lights. The owner and operator of the tugs which were engaged in towing the barges were found to have exercised due care and to have been in no way responsible for the collision. Accordingly an interlocutory decree was granted to the libellant in the first suit with the usual reference as to damages. The petition to implead the owner and operator of the tugs in the first suit and the libel in the second suit were dismissed. We hold that the damages should be divided between the Fall River Navigation Company and the Perth Amboy No. 2, her owner and operator.

■ Without any adequate excuse the Atwater anchored at a point about 500 feet from the westerly boundary of the main ship channel which is a "narrow channel". Outbound vessels are accustomed to hold to the westerly side of the channel in compliance with the Narrow Channel Rule, 33 U.S.C. § 210, 33 U.S.C.A. § 210. The LaBretagne, 2 Cir., 179 F. 286; The Deutschland-Munargo, D.C., 14 F.Supp. 282, affirmed, 2 Cir., 90 F.2d 454. There can be no doubt that anything which substantially narrowed the channel would embarrass the navigation of such a tow as that of the Perth Amboy No. 2. She had 29 barges made up in seven tiers of four barges each with a single tail barge. The aggregate length of the tug, towing lines and barges was about 1,000 feet, and a northeasterly wind was blowing at about 25 miles an hour. The difficulties of the tug were increased by the position of the after anchor light on the Atwater which was obscured by a pilothouse that stood higher above the dock

than the anchor light. Moreover, there were unscreened deck and house lights approximately on a plane with the forward anchor light so that the latter was not readily distinguishable as such from a long distance and was not so lighted that it could best be seen. 33 U.S.C. Sec. 171, 33 U.S.C.A. § 171. Several witnesses testified that the lights of the Atwater were confusing to those navigating the Perth Amboy No. 2 and led them to the belief that the Atwater was moving down the channel instead of anchored in it. We think that the court below was right in holding that the Atwater was liable for damages arising from its violation of the statute which makes it unlawful to "anchor vessels * * * in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft * * *." 33 U.S.C. Sec. 409, 33 U.S.C.A. § 409; United States v. St. Louis, etc., Transp Co., 184 U.S. 247, 22 S.Ct. 350, 46 L.Ed. 520; Otto Marmet Coal & Min. Co. v. Fieger-Austin Dredg. Co., 6 Cir., 259 F. 435; Strathleven Steamship Co. v. Baulch, 4 Cir., 244 F. 412; The Caldy, 4 Cir., 153 F. 837.

■ We cannot agree with the finding that the Atwater was solely at fault. When proceeding down the channel with his tow, the master of the Perth Amboy No. 2 seems to have been engaged in watching a Russian vessel he was passing, and not to have looked to see what was ahead of him. Because of inattention he saw no lights of the Atwater until he got within about 750 feet of her. The Russian vessel was about a quarter of a mile to the north of the Atwater and we can see no reason why the master of the tug could not see the steamship long before he did. Even allowing for some temporary confusion caused by the lights on the Atwater and the erroneous belief that she was proceeding down the harbor instead of lying at anchor in the main channel, the master of the tug discovered his mistake within a second or two after he first saw the Atwater and could have navigated his vessel so as to avoid a collision had he seen the steamer in time. We can discover no excuse for not seeing the lights of the Atwater at all until she was only 750 feet away. If the master had seen her a quarter of a mile away he probably would and certainly could have gone to the east of her instead of passing her on the west as a result of which

the tow swung across her bow and was carried by the north wind, then blowing at 25 per hour, against the Atwater. If he had promptly seen the Atwater and passed to the east of her he would have had a clear channel of about 2,000 feet in width within which to navigate. We can see nothing to explain the unfortunate manoeuvre but the lack of a diligent lookout and the ignorance of the presence of the Atwater in the channel. It seems evident that the collision between the steamer and the barges would have been avoided if the tug had seen the Atwater soon enough to lay a course to the east where there was room to navigate, instead of a course in which the tow would be swung directly across her bow.

■ Counsel for the Atwater call our attention to the fact that the Tice Towing Line paid $10,100 in settlement of the claims of the owners of the barges and took an assignment of their claims to one Lacey, an employee of the Dalzell Towing Company, of which the respondent Fred B. Dalzell is the president and a stockholder. The payment was made under an agreement whereby the suit by the barge owners was to be instituted in the name of the owners. It is contended on behalf of the Perth Amboy No. 2, her owner and operator, that damages in excess of the $10,100 may be recovered under the first libel if they can in fact be proved. We do not agree. The Tice Towing Line, one of the joint tort feasors, furnished the money for the settlement. Contribution is an equitable right and if allowable between joint tort feasors, as it is in admiralty, no more ought to be exacted than one-half of the amount actually paid in satisfaction of the original claims. This is in accord with our decision in The Gulf Stream, 2 Cir., 64 F. 809. Am.Law Inst., Restatement, Restitution § 85, Comment a; Sutherland on Damages, 4th Ed. 1916, § 1287; Merchants Discount Corp. v. Federal Street Corp., Mass., 14 N.E.2d 155, 118 A.L.R. 412; Bonney v. Seely, 2 Wend., N.Y., 481, 483; Rider v. Coyne, 246 Mich. 365, 224 N.W. 332.

The interlocutory decree upon the libel by the owners of the barges is so modified as to divide damages in the amount of $10,100 and interest between the Fall River Navigation Company and the Perth Amboy No. 2, the owner Fred B. Dalzell and Tice Towing Line. The decree dismissing the libel by Fall River Naviga-

tion Company against Tug Perth Amboy No. 2, Fred B. Dalzell and Tice Towing Line is reversed and an interlocutory decree with the usual reference is granted to Fall River Navigation Company against Perth Amboy No. 2, Fred B. Dalzell and Tice Towing Line for half damages. No costs.

### On Petition for Rehearing.

#### PER CURIAM.

Upon further consideration we are not wholly satisfied that the evidence in the record, from which we inferred that only $10,-100 was the consideration for the assignments, was sufficiently clear to justify us in drawing such an inference and from dispensing with proof before a commissioner of the value of the consideration furnished by the Tice Towing Line.

It is entirely clear: (1) that there were outright assignments and that no beneficial interest thereafter remained in the libellants; (2) that the item of $3,000 sought to be recovered for the legal expense of conducting suits on behalf of the Tice Towing Line is not recoverable as part of the consideration paid for the reason that legal expenses were incurred for the sole benefit of Tice Towing Line; (3) that any right to recover the other items sought, to wit: credit for towage service $3,000; settlement of salvage claim $90, and value of services for picking up boats, pumping and towing (if they in fact formed any part of the consideration agreed upon), must depend on further proof.

It is to be noted that all that a joint tort-feasor like Tice Towing Line, Inc., can recover is what it is actually out of pocket. In other words, if in return for the assignments, it extended credit in the amount of $3,000 to the libellants on towage service, and if that item included profit, it would only be entitled to recover such portion of the $3,000 as represented the cost of rendering the services, and not any portion which represented profit. What is said in respect to recovery of any part of this item of $3,-000 is in accord with the rule laid down in The Gulf Stream, 2 Cir., 64 F. 809, and the other authorities already cited in the main opinion.

As Fred B. Dalzell was only made a party to the suit as claimant of the tug Perth Amboy No. 2, no personal decree shall be rendered against him.

An interlocutory decree is granted upon the libel by the owners of the barges, dividing damages between the Fall River Navigation Company on the one hand and the Perth Amboy No. 2 and Tice Towing Line on the other, and an interlocutory decree is also granted upon the libel of Fall River Navigation Company for half damages against the Perth Amboy No. 2 and the Tice Towing Line, the damages under each libel to be reported by a commissioner in accordance with the provisions of this opinion.