## ATLANTIC REFINING CO. *v.* MOLLER.

No. 56. Argued December 7, 1943.—Decided December 20, 1943.

*Mr. Otto Wolff, Jr.* for petitioner.

*Mr. J. Harry La Brum,* with whom *Mr. Leonard J. Matteson* was on the brief, for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

While lying at anchor in the channel of the Delaware River the tanker "Bohemian Club," owned by the petitioner, was struck by the motor vessel "Laura Maersk," owned by the respondent. Damage to each vessel resulted, for which the respective owners sought recovery in this admiralty proceeding. The District Court found that the collision was caused by the excessive rate of speed at which the "Laura Maersk" was proceeding down the channel, rendered judgment for the full amount of damages inflicted upon the "Bohemian Club," and dismissed the cross-libel of respondent against the "Bohemian Club." 40 F. Supp. 641. The Circuit Court of Appeals approved the District Court's finding that the "Laura Maersk" was negligent but concluded, with one judge dissenting, that the "Bohemian Club" was also negligent, and reversed with directions that the rule of divided damages be applied. 134 F. 2d 1000. See *The Schooner Catharine* v. *Dickinson,* 17 How. 170, 177–178; *The North Star,* 106 U. S. 17, 20. The Circuit Court's conclusion that the

"Bohemian Club" was negligent rested upon its interpretation of the following portion of § 15 of an Act of March 3, 1899: "It shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft." [1] We granted certiorari because of an alleged conflict among the circuits as to the proper interpretation to be given this Act.[2]

The findings of both courts show that the accident happened under the following circumstances. At about 7:30 A. M. the "Bohemian Club," 435 feet long, was proceeding northward on the east side of the channel of the Delaware River when she encountered a dense fog. Unable to move without endangering herself and other vessels, and unable to obtain anchorage within a distance of five miles, she dropped anchor along her course in the channel. At this point the channel was approximately 1,200 feet wide, and northbound vessels were required to use the 400 feet adjacent to the channel's eastern boundary. Under the circumstances, the safest course of conduct for the "Bohemian Club" was to anchor where it did. About 10 A. M. the fog lifted slightly and the Master discovered a large steel buoy about 150 feet to the northeast of the vessel. The tide was then ebb, and was flowing away from the buoy, but was due to change to flood shortly. Fearing that this change might cause the vessel to foul the buoy, the Master had the anchor lifted, the engines put slow ahead, and the rudder put hard right. In less

---

[1] 30 Stat. 1152; U. S. C. Title 33, § 409. The Act imposes penal sanctions for violations of § 15. See §§ 16–18. However this section has been interpreted as establishing a standard of care applicable in ordinary negligence actions for damages. See *Otto Marmet Coal Co.* v. *Fieger-Austin Dredging Co.*, 259 F. 435; *The William C. Atwater*, 110 F. 2d 644; *The Southern Cross*, 93 F. 2d 297.

[2] See, for example, *The City of Norfolk*, 266 F. 641; *The A. P. Skidmore*, 115 F. 791; *The Socony No. 9*, 74 F. 2d 233.

than five minutes, however, the fog again dropped, and the vessel was again anchored. This time, apparently because she had been carried by the tide, the "Bohemian Club" lay somewhat south and west of her original position so that she partially obstructed the western part of the channel used by southbound vessels. There was, however, ample room in the western part of the channel for a southbound vessel to pass the "Bohemian Club"; in fact, since the western part of the channel was twice as wide as the eastern part, there was more space for southbound vessels to pass than there had been for northbound vessels to pass when the "Bohemian Club" was anchored in the eastern part of the channel. There are no findings that the Master of the "Bohemian Club" had any reason to believe that his vessel constituted a more dangerous obstruction to river traffic in general[3] in her second position than in her original position. In compliance with the statutory requirement imposed on vessels which are compelled to anchor in the fog, the "Bohemian Club's" fog bell was rung rapidly for five seconds at minute intervals;[4] and, in addition, lookouts were stationed on the bridge and forecastle. Despite these precautions the "Laura Maersk," southbound at what both courts agreed was an unreasonable speed, crashed into the "Bohemian Club" about one hour and fifteen minutes after she anchored the second time.

---

[3] The opinion of the Circuit Court emphasizes the fact that the "Bohemian Club" did not obstruct southbound traffic in her first position but did obstruct this traffic in her second position. Since, however, the "Bohemian Club" obstructed the northbound traffic in her first position, this fact could not be material unless there was evidence that her Master should have anticipated that the volume of southbound traffic would be heavier than that of northbound traffic. No finding on this question is disclosed by the record.

[4] Article 15, Navigation Rules for Harbors, Rivers, and Inland Waters; 30 Stat. 99; U. S. C. Title 33, § 191 (2) (d).

The question for decision is whether the Circuit Court correctly held that the action of the "Bohemian Club" in anchoring in the channel at the point of the collision was unlawful under § 15 of the Act of March 3, 1899. The command of § 15 forbidding vessels to "anchor . . . in navigable channels" has uniformly been interpreted not to be absolute.[5] An exception to the duty required by this section has been recognized where literal compliance with its terms would create a danger to navigation which could be avoided or reduced by violation of its terms. See *The Socony No. 9*, 74 F. 2d 233, 234. As a practical matter an opposite construction would defeat the plain purpose of § 15 to maintain and promote the safety of navigation. It would, in addition, be out of harmony with Article 27 of the general Navigation Rules for Harbors, Rivers, and Inland Waters, which requires that "in obeying and construing these rules due regard shall be had to all dangers of navigation and collision, and to any special circumstances which may render a departure from the . . . rules necessary in order to avoid immediate danger."[6] Cf. *The Cayuga*, 14 Wall. 270, 275, 276. Furthermore Article 15 of these general Rules, above referred to, contemplated that under some circumstances vessels may be compelled to anchor in foggy weather, and prescribed sound signals which vessels so anchored must use.

In the instant case the Circuit Court of Appeals recognized that the duty imposed by § 15 is not absolute and held that, under the circumstances, the act of the "Bohemian Club" in anchoring on the east side of the channel was lawful. The Court felt compelled, however, to hold that the act of anchoring on the west side was unlawful under § 15. We think this section does not require such a

---

[5] *The Europe*, 190 F. 475, 479; *The Caldy*, 153 F. 837, 840; see also the cases cited in Note 2, *supra*.

[6] 30 Stat. 102, U. S. C. Title 33, § 212.

holding. Whether anchored on the east or the west side of the channel the "Bohemian Club" would, within the literal terms of the section, "obstruct the passage of other vessels." The District Court found that when the fog enveloped the "Bohemian Club" for the second time, "the least dangerous course" was to anchor on the west side of the channel; and this finding was not disturbed by the Circuit Court. Under a proper construction of § 15, therefore, the circumstances which necessitated both the first and second anchorings of the "Bohemian Club" were equally sufficient to warrant an exception to the duty which it requires. Whether the act of lifting anchor and moving to the western part of the channel to avoid the danger of the buoy constituted negligence is a question wholly outside § 15. Since the holding of the Circuit Court rested upon an erroneous interpretation and application of this section, its judgment must be reversed.

*Reversed.*