**STANOLIND OIL & GAS CO. v. MISSISSIPPI VALLEY BARGE LINE CO.**

No. 13415.

United States Court of Appeals
Fifth Circuit.

Dec. 20, 1951.

Robert Eikel, Houston, Tex., for appellant.

Sweeney J. Doehring, Houston, Tex., for appellee.

Before HUTCHESON, Chief Judge, and RUSSELL and RIVES, Circuit Judges.

JOSEPH C. HUTCHESON, Jr., Chief Judge.

Brought by libel in personam, the suit was for damages to the barge C. T. C. 422, as a result of a collision in the Intracoastal Canal between it and respondent's barge No. 1372.

The claim of the libel was: that the barge No. 1372 had been negligently, and in violation of statutory regulations, moored in the fairway; that, unmanned, unattended, and without permission to moor, it had been tied up to the north bank of the canal; and that, because thereof, the barge C. T. C. 422, while proceeding as one of a tow of five barges in charge of the tug Debardeleben, had collided with it and received great damage.

Respondent's defenses were: a denial that its barge was illegally or negligently moored; a claim that the mooring of the barge was temporary and, because of an emergency, as permitted by the Regulations; and a claim that the collision was neither caused, nor contributed to, by the fault of its barge.

Pleading affirmatively, it alleged that the collision was solely caused by the negligence of The Debardeleben: in attempting to tow so many barges under the conditions of wind and water then prevailing; and in

respect to negligent acts of maneuver and navigation at and before the time of the collision, fully alleged.

The cause was submitted on a stipulation,[1] a deposition, and written and oral testimony.

The taking of the evidence concluded,[2] the district judge found:[3] that the fault of each was a proximate cause of the collision, and that libellant should have half damages; and respondent has appealed.

Here appellant points to the evidence of the captain of The Debardeleben, that he knew that the passage could not be made without contact with the moored barge but that he thought the contact would not be serious, as a confession that he deliberately collided.

Invoking the rule that there is no "right of way" into collision, appellant insists: that if there was fault in the mooring, it was not a proximate cause; that the deliberately wrongful fault of The Debardeleben was the sole proximate cause of the collision; and that Stanolind should have gone free. In addition, it insists: (1) that the mooring was not negligent and forbidden, but was an emergency mooring, permissible under the circumstances, as shown by the undisputed testimony; and (2) that if there was fault in the mooring, it was the fault not of appellant but of an independent contractor.

Appellee, vigorously opposing these contentions, urges upon us: that the evidence supports the court's findings of fact; and

1. Among other things, it was agreed that the tug Debardeleben was negligent, and that if libellant was found entitled to recover it should be for only half damages.

2. This was its substance:

While respondent was engaged in drilling an oil well on the banks of the Warren Canal, about two miles north of where it joined the Intracoastal Canal and Waterway, apprehension of a blowout required the immediate dispatch to the well of a derrick barge and drag line. Unable to obtain the services of a fast shallow draft tug, respondent engaged a tug, with a draft too deep to navigate the Warren Canal, to tow the barge up to it where it would be met and towed up by a shallow draft tug.

Pursuant to the contract, the barge was brought by the Clooney Tug up the Intracoastal Canal and tied against the north bank of the Intracoastal Canal just east of the Warren Canal, a representative of appellant stating that the barge was where he wanted it. About an hour afterward the collision, for which the suit is brought, occurred.

The damaged barge was the fourth in a tow of five empty barges being towed by the Debardeleben, a Coyle Line tug. Each barge was about 175 feet long, making the tow 900 feet in all. The tug was proceeding east with good visibility of at least a mile and a half. There was a stiff wind of 25 miles an hour blowing north across the channel, and the tug had trouble holding his barges on his own south side.

The captain of the tug saw the moored barge when the tug was about three-quarters of a mile away, and reduced his speed to half a head. The reduction of the speed caused the stern barges to trail farther down wind and almost to drag the north bank.

The captain of the tug, although he figured that one of his barges would brush the moored barge, determined to proceed and to attempt to pass, expecting to drag his stern barge along the side of appellant's barge.

At about the time the maneuver commenced, an oncoming tug and tow were sighted, and a danger signal to it was given, but the approaching tug came on, and it became necessary for The Debardeleben to further reduce her speed. The wind, whipping through the cut, carried the barges in tow across the channel to the northward, and the fourth barge, CTC 422 struck the corner of the moored derrick barge, doing great and unexpected damage to it.

There was evidence that such rubbing of barges as the captain anticipated is a common and natural occurrence in a narrow channel.

3. These were: (1) that the mooring of respondent's barge in the fairway was not an emergency such as is dealt with in the Code of Federal Regulations, Title 33, Art. 207.180; (2) that its mooring was a proximate cause of the collision; and (3) that the tug Debardeleben was at fault in many particulars set out in the findings, and that its fault was a, but not the sole, proximate cause of the collision.

that its conclusions to award half damages find full support in the decided law.

 We agree. Controlling decisions are gathered, and the law of this case is well decided by the court, in The Victor (The Timberline) 153 F.2d 200. There the court, after careful consideration of the facts in the light of the decisions dealing with cases of this kind, reversing the judgment of the lower court which had assessed full damages against the moving vessel, divided them between the improperly moored, and the improperly moving, vessel.

Appellant's insistence, that that rule does not apply here, but that, under the authorities it cites, the moving vessel should be held solely responsible, will not do. For, despite appellant's urging, we cannot agree with it that the evidence shows: either that the mooring of the barge was a permissible emergency mooring; or that, if it was negligently done, it was not the act of appellant, but of an independent contractor for which appellant was not responsible.

Neither can we agree with it, that the fault in the mooring was not a proximate cause of the collision, but that its sole proximate cause was what appellant denominates the deliberate or reckless act of the captain of the tug Debardeleben, in bringing on a collision in complete disregard of the consequences.

 If we could agree with appellant that the evidence compels the view that the collision came about in this way, we should, of course, agree with it that, under the authorities it cites, the libel should have been dismissed. We think it plain, however, that this view of the evidence is incorrect. What, and all, that the evidence adds up to is that while the captain of The Debardeleben thought he might scrape against libellant's barge in passing, he thought correctly, as the event proved, that no real damage would be done to it. On the record made, showing libellant primarily at fault, we agree with the District Judge, that the most that can be said in condemnation of the tug for trying to pass the obstructing barge is that it was such negligence as that, for injury to the barge he was towing, only half damages could be awarded.

The judgment was right. It is affirmed.