**B & M TOWING COMPANY, Claimant, Appellant,**

v.

**Alex A. WITTLIFF, Appellee.**

**No. 16860.**

United States Court of Appeals
Fifth Circuit.

Aug. 18, 1958.

Robert Eikel, Houston, Tex., for appellant.

David L. Greenberg, Hosey, Greenberg & Schwartz, Galveston, Tex., for appellee.

Before RIVES, BROWN, and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

On the night of January 18, 1955, the fishing vessel Angler lay disabled along the south bank of the Intracoastal Waterway near milepost 340. Because of damage to its rudder, the vessel lacked steering control and was capable only of circular movement. About eleven thirty that night a passing vessel struck the Angler causing her to sink. The offending vessel did not stop and Lynn Finley, the only man aboard the Angler, was unable to identify the vessel at that time. Some months later Wittliff, owner of the Angler, filed a libel against the tugboat Harriet M, barges B & M 1901, 2101,

and 2401, and the B & M Towing Company, their owners. The libel alleged that the vessel striking the Angler was a trailing barge in the tow of the Harriet M; that the collision was the sole fault of those in charge of the tugboat and the barges. The trial judge held that damage to the Angler was the sole fault of the Harriet M and awarded damages to libellant in the amount of $8500.

On appeal the respondent contends that: (1) the evidence is not sufficient to support the Court's finding that the barge in the Harriet M's tow struck the Angler; (2) libellant was at fault in allowing the Angler to be left in a position of peril obstructing a navigable channel; (3) the trial court erred in allowing damages in excess of $3,300.

We affirm the decree of the district court as not clearly erroneous.

## I.

The district court, after hearing all the witnesses and considering the evidence, stated:

"By reason of Finley's testimony, the admitted fact that the Harriet M and her tow were in the immediate vicinity of the Angler at the time in question, of the further fact that the barges comprising the tow of the Harriet M were empty (and hence could have floated in the shallow water where the Angler lay), and all the other evidence in the case which tended to exclude the possibility of any other vessel being involved, I am clearly of the view, and find as a fact that the Angler was struck by Barge 2401, being the trailing barge of the Harriet M's tow, when forced or blown by the strong wind toward the south side of the canal."

A Court of Appeals in reviewing a judgment of a trial court sitting without a jury in admiralty may not set aside the judgment below unless it is clearly erroneous. McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20. Appellant attacks the decree below primarily on the ground that it was based on purely speculative and circum-

stantial evidence. On the record, the evidence was sufficient to place the Harriet M in the vicinity of the Angler at the time of the collision. Only one vessel passed between the time Finley went aboard the Angler and the collision. We will not retry the case; that is the trial court's function. No greater scope of review is exercised by appellate tribunals in admiralty cases than in civil cases under Fed.Rules Civ.Proc. Rule 52, 28 U.S.C.A. C. J. Dick Towing Co. v. The Leo, 5 Cir., 1953, 202 F.2d 850, 854.

## II.

The "Anchorage Statute", 33 U.S.C.A. § 409 makes it "unlawful to tie up or anchor * * * in navigable channels in such a manner as to prevent or obstruct the passage of other vessels. * * * ". The Angler, however, was, according to appellant's own pleadings, "lying close against the south bank of the Intracoastal Canal, *apparently out of the canal and aground, * * * "*. Furthermore, the coast guard inspected the vessel sometime within an hour before the collision. There was no complaint of anchorage violation. Even if there had been some obstruction, if it was made necessary by emergency action there would have been no violation of the statute. See *Atlantic Refining Co. v. Moller*, 1943, 320 U.S. 462, 64 S.Ct. 225, 88 L.Ed. 168. Appellant relies on the case of Stanolind Oil & Gas Co. v. Mississippi Valley Barge Co., 5 Cir., 1951, 193 F.2d 147. There, however, the Court merely disagreed with the contention that the evidence showed a permissible emergency mooring.

Both Wittliff and Tucker, the Angler's master, did all that could be expected of them under the circumstances. Two attempts were made to tow the Angler. The bad weather and the disabled condition of the Angler prevented success. With the exception of McKreg's vessel and the Dalehite tug, the two vessels that attempted to tow, the possibilities of obtaining towage were slight, if not impossible because of the bad weather. The Coast Guard refused to tow. The

Dalehite tug tried but was unsuccessful. McKreg's vessel had a bad clutch. Wittliff felt that the bad weather would keep commercial towing companies from coming out; this was not an unreasonable assumption on his part. We find in the circumstances he acted reasonably.

### III.

Appellant attacks the court's award of $8500 as excessive. When a vessel is an actual or constructive total loss, as here, the measure of damages is the market value of the vessel less the value of salved equipment or materials. See the Fire Island, Carl Sawyer, Inc., v. Poor, 5 Cir., 1950, 180 F.2d 962. Appellant contends that no more than $3,300 should have been awarded. The district court, however, gave more weight to the testimony of Dence, a marine surveyor, on the quantum of damages than to the testimony of respondent's witnesses.

The decree is

Affirmed.