# United States Court of Appeals
## For the First Circuit

No. 05-1637

THE PUERTO RICO PORTS AUTHORITY
(AUTORIDAD DE LOS PUERTOS DE PUERTO RICO),

Plaintiff, Appellant,

MIGUEL SOTO-LACOURT,

Plaintiff,

v.

JOSE ALBERTO UMPIERRE-SOLARES;
DIVERS SERVICE CENTER, INC.; MILTON ANDREWS-FIGUEROA;
MILTON ANDREWS CRANE SERVICES, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Camille L. Velez-Rive, U.S. Magistrate Judge]

Before

Selya, Lipez, and Howard, Circuit Judges.

Edward W. Hill-Tollinche, with whom Quiñones Sánchez & Guzmán,
P.S.C., Humberto Guzman-Rodriguez, and Tessie Leal-Garabis were on
brief, for appellant.
Lorenzo J. Palomares, with whom Lorenzo Palomores, P.S.C. was
on brief, for appellees.

July 27, 2006

**LIPEZ, Circuit Judge**. Resolved in the district court on the basis of its admiralty jurisdiction, this case involves a contract dispute over the disposal of a sunken ship. We must decide whether the district court had admiralty jurisdiction over this matter and, if so, whether the district court correctly ruled that the relief sought by the Puerto Rico Ports Authority ("PRPA") was barred by the doctrine of laches. Because we answer both questions in the affirmative, we affirm the judgment of the district court.[1]

## I.

In 1989, the vessel "La Isla Nena" sunk in the navigable waters of San Juan Harbor during Hurricane Hugo. In 1991, the United States Army Corps of Engineers ("Corps") instructed the PRPA, the owner of La Isla Nena, to remove the vessel because it was obstructing navigation. In January 1992, Defendants Jose Alberto Umpierre Solares, Divers Service Center, Inc., Milton Andrews-Figueroa, and Milton Andrews Crane Service, Inc. (collectively, "Defendants")[2] submitted a proposal to the PRPA for the removal of the vessel from San Juan Harbor. The proposal presented two alternatives: Defendants could raise and put the

---

[1] All references to the district court herein refer to the magistrate judge exercising her consent authority pursuant to Rule 73(a) of the Federal Rules of Civil Procedure.

[2] Umpierre Solares is an officer of Divers Service Center, Inc. Milton Andrews-Figueroa is the sole shareholder of Milton Andrews Crane Service Center, Inc.

vessel on shore for $75,000, or raise and dispose of the vessel for $85,000. In April 1992, the PRPA and Defendants entered into a contract ("Contract") for "the removal and disposition of the vessel Isla Nena, sunken at the bottom of the sea in the area of the Army Terminal" in exchange for payment of $85,000. Defendants subsequently raised the vessel and moored it at a shipyard in the city of Cataño. When required permits made re-sinking the vessel unfeasible, the parties modified the Contract in September 1992. The PRPA agreed to pay Defendants $84,000 (instead of $85,000) to dispose of the vessel "in the most convenient and speedy way possible." The PRPA issued payment to Defendants on September 9, 1992. The vessel is presently partially sunk (as the result of a storm) at the shipyard in Cataño.

## II.

On October 31, 2003, the PRPA and its Executive Director, Miguel Soto-LaCourt[3] (collectively, "Plaintiffs"), filed a complaint in Puerto Rico Superior Court seeking specific performance under the Contract to remove and dispose of La Isla Nena. Invoking admiralty jurisdiction, Defendants removed the case to the district court. Defendants subsequently filed a motion for summary judgment, claiming that the action was time-barred pursuant

---

[3] Aside from the complaint, the only filings in which Soto-LaCourt's name appears are Plaintiffs' motion to remand and the joint discovery report. All other filings in opposition to Defendants, including the Notice of Appeal and Amended Notice of Appeal, were brought solely by the PRPA.

-3-

to the laches doctrine, and that the Contract was a salvage contract subject to a two-year statute of limitations. The PRPA filed its opposition, arguing that laches did not apply, and that the Contract was a contract for professional services, not a salvage contract, and subject to a fifteen-year statute of limitations. On March 1, 2005, the district court granted Defendants' motion for summary judgment under the laches doctrine, and dismissed Plaintiffs' complaint with prejudice.

On March 16, 2005, the PRPA, through new legal counsel, filed a motion to alter, amend, or vacate judgment ("Motion to Alter/Amend"), arguing for the first time that the district court lacked admiralty jurisdiction under the "dead ship" doctrine. On March 30, 2005, the PRPA appealed the district court's grant of Defendants' motion for summary judgment. We refused to entertain the appeal pending the outcome of Defendants' Motion to Alter/Amend, pursuant to Federal Rule of Appellate Procedure 4(a)(4)(A).[4] On June 1, 2005, the district court denied the PRPA's Motion to Alter/Amend because there were issues of fact as to whether La Isla Nena was a "dead ship."[5] The PRPA subsequently

---

[4] Federal Rule of Appellate Procedure 4(a)(4)(A) provides that "[i]f a party timely files in the district court [a motion to alter or amend the judgment under Rule 59, or a motion for relief under Rule 60] the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion."

[5] It is unclear from the record why the district court denied the PRPA's Motion to Alter/Amend and let stand its prior order granting Defendants' motion for summary judgment, despite finding that there were "significant controversies of fact to be elucidated" regarding

amended its notice of appeal to include the district court's June 1 decision.

### III.

We review grants of summary judgment de novo. DeNovellis v. Shalala, 124 F.3d 298, 305 (1st Cir. 1997). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review a district court's denial of a motion to alter or amend judgment for abuse of discretion. See Earnhardt v. Commonwealth of Puerto Rico, 744 F.2d 1, 2 (1st Cir. 1984). We may affirm a district court decision on any ground supported by the record. See Doe v. Anrig, 728 F.2d 30, 32 (1st Cir. 1984) (appellate court free to affirm based on any ground supported by the record).

### IV.

#### A.        Jurisdiction

The PRPA argues that the district court lacked admiralty jurisdiction over the removed action because La Isla Nena was a

---

the jurisdictional issue. The logical next step, we think, would have been for the court to grant the PRPA's Motion to Alter/Amend, vacate the summary judgment order, and resolve the jurisdictional issue. Nevertheless, because we affirm the district court's admiralty jurisdiction over this dispute on other grounds, this apparent inconsistency in the district court's ruling poses no problem on appeal.

"dead ship."[6]  Under the dead ship doctrine, a ship loses its status as a vessel subject to admiralty jurisdiction "when its function is so changed that it has no further navigation function." Mullane v. Chambers, 333 F.3d 322, 328 (1st Cir. 2003) (internal citation and quotation marks omitted).  Defendants argue that the removed action was within the district court's admiralty jurisdiction because the Contract relates to the removal and disposal of La Isla Nena – "a marine peril [of which the Corps] had demand[ed] removal . . . [because it] posed a risk to the maritime navigation and maritime commerce traveling the navigable waters of San Juan Bay."[7]  We agree with Defendants that the Contract was maritime in nature and, therefore, within the admiralty jurisdiction of the district court.

---

[6] Defendants argue that the PRPA waived this jurisdictional claim by not raising it prior to the district court's grant of summary judgment in Defendants' favor.  This argument is without merit. "[T]he objection to subject matter jurisdiction is not waivable and may be raised for the first time on appeal."  F.A.C., Inc. v. Cooperativa de Seguros de Vida de Puerto Rico, 449 F.3d 185, 189 (1st Cir. 2006).  Here, the PRPA raised its objection in a Motion to Alter/Amend filed before its Notice of Appeal and, thus, the district court did not err in reaching the merits of the objection.

[7] Defendants raise several additional – albeit somewhat convoluted – arguments in favor of admiralty jurisdiction, namely, that: the Contract is a "salvage contract" and is therefore subject to admiralty jurisdiction; and La Isla Nena sank "in the navigable waters of San Juan Bay" and, therefore, "admiralty jurisdiction [is] apparent on its face."  Because we agree with Defendants that admiralty jurisdiction extends to this action because the Contract relates to the removal and disposal of an obstruction to navigation, we do not address Defendants' alternative arguments.

Section 1333(1) of Title 28 U.S.C. provides that federal district courts shall have jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." The Supreme Court has reiterated that "the fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce." Exxon Corp. v. Cent. Gulf Lines, Inc., 500 U.S. 603, 608 (1991) (internal quotation marks and citation omitted). Therefore, in determining whether a contract falls within maritime jurisdiction, we focus our inquiry on "whether the nature of the transaction was maritime," id. at 611, that is, whether the contract "relate[s] to the navigation, business or commerce of the sea." Cunningham v. Director, Office of Workers' Compensation Programs, 377 F.3d 98, 109 n.11 (1st Cir. 2004) (quoting Nacirema Co. v. Johnson, 396 U.S. 212, 215 n.7 (1969)); see also Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 23-24 (2004) ("To ascertain whether a contract is a maritime one . . . the answer depends upon the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions." (internal quotation marks and citations omitted)).

After La Isla Nena sunk in the navigable waters of San Juan Harbor, the Corps issued a "Mark and Removal Order" to the PRPA to remove the obstruction, pursuant to Section 15 of the Rivers and Harbors Act of 1899 ("RHA"), 33 U.S.C. § 409.[8] Section

--------

[8] Section 15 of the RHA states, in relevant part, that:

15 of the RHA, entitled "Obstruction of navigable waters by vessels; floating timber; marking and removal of sunken vessels," seeks "to maintain and promote the safety of navigation," The Bohemian Club v. Moller, 320 U.S. 462, 466 (1943), by providing for the prompt removal of obstructions to navigation. Accordingly, when the PRPA entered into a contract with Defendants for the removal of La Isla Nena from the navigable waters of San Juan Harbor, this transaction was maritime in nature because it related to the removal of an obstruction to the "navigation, business or commerce of the sea." Cunningham, 377 F.3d at 109 n.11; compare D.M. Picton & Co., Inc. v. Eastes, 160 F.2d 189, 192-93 (5th Cir. 1947) (stating that "it would be difficult to imagine a contract more completely maritime" than a contract for removal of damaged pilings and timber which constituted "menaces to navigation," and holding that claim for breach of contract "to remove hazards to navigation" was, therefore, within admiralty jurisdiction), with R. Maloblocki & Assocs., Inc. v. Metro. Sanitary Dist., 369 F.2d 483, 485 (7th Cir. 1966) (holding that contract for dredging navigable waterway was not maritime in nature because the purpose of the

---

It shall not be lawful to . . . sink, or permit or cause to be sunk, vessels or other craft in navigable channels . . . . And whenever a vessel, raft or other craft is wrecked and sunk in a navigable channel, it shall be the duty of the owner, lessee, or operator of such sunken craft to . . . commence the immediate removal of the same, and prosecute such removal diligently . . . .

contract was flood control and that "any effect the project may have had upon navigability was, at best, incidental." (internal quotation marks omitted)).  The district court therefore had admiralty jurisdiction to entertain the removed action.

We acknowledge the PRPA's reliance upon a line of cases holding that contracts involving "dead ships" are not maritime in nature and thus are not subject to admiralty jurisdiction.  See, e.g., Robert E. Blake, Inc. v. Excel Envtl., 104 F.3d 1158, 1160, 1162 (9th Cir. 1997) (holding that indemnity claim arising under contract involving repair and activation of ship which had been stored for several years and had been deactivated was outside admiralty jurisdiction); Murray v. Schwartz, 175 F.2d 72, 72-73 (2d Cir. 1949) ("A wharfage contract touching a dead ship is not maritime, and a contract which is not maritime cannot create a lien subject to the jurisdiction of admiralty.").  This reliance is misplaced.  Not one of the cases cited by the PRPA involves a contract for the removal of a ship obstructing navigable waters. Whether La Isla Nena was "live" or "dead" when it was lying at the bottom of San Juan Harbor, obstructing navigation, is of no consequence to our jurisdictional inquiry.  What matters is that La Isla Nena was lying at the bottom of San Juan Harbor, obstructing navigation, and that the Contract related to the removal of this obstruction.

The PRPA's reliance upon our decision in <u>Luvi Trucking,</u>
<u>Inc.</u> v. <u>Sea-Land Service, Inc.</u>, 650 F.2d 371 (1st Cir. 1981), is
likewise unavailing.  In that case, we held that a trucking
company's contract with a sea carrier to haul cargo containers
overland from one ocean pier to another was not maritime in nature,
and relied on an influential treatise for the proposition that a
contract is not maritime in nature

> merely because the services to be performed under the
> contract have reference to a ship, or to its business, or
> that the ship is the object of such services or that it
> has reference to navigable waters.  In order that such
> character should attach, there must be present a direct
> and proximate juridical link between the contract and the
> operation of the ship, its navigation or its management
> afloat . . . .

<u>Id.</u> at 373 (quoting 1 <u>Benedict on Admiralty</u> § 182, at 11-5 (6th ed.
1974)).  The PRPA argues that admiralty jurisdiction does not
attach in this case because the Contract is not linked to "the
operation, navigation or management of a vessel afloat," but rather
to La Isla Nena, which "is not a vessel, but rather a dead ship."
We decline to adopt the PRPA's strained reading of the language
quoted in <u>Luvi</u>.

In <u>Luvi</u>, the jurisdictional inquiry did not turn on
whether a ship was "live" or "dead".  Rather, the issue in that
case was whether admiralty jurisdiction should attach to a contract
for services provided by a trucking company which "never came in
contact with a ship," and which "merely picked up the [cargo
containers] at one terminal and drove them to the other."  <u>Id.</u> at

-10-

373-74. We concluded that these services were too far removed from maritime matters to provide "a basis for characterizing the contract as maritime." Id. at 374; see also Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l, Ltd., 968 F.2d 196, 200 (2d Cir. 1992) ("[T]he subject matter of the dispute is so attenuated from the business of maritime commerce that it does not implicate the concerns underlying admiralty and maritime jurisdiction."). Here, it is undisputed that Defendants came in contact with La Isla Nena – they removed it from the bottom of San Juan Harbor and moored it at a shipyard in the city of Cataño. Unlike the overland hauling contract in Luvi, the removal services provided by Defendants under the Contract closely relate to maritime commerce and thus provide a firm basis for characterizing the Contract as maritime in nature, regardless of whether La Isla Nena was a dead ship.

## B.       Laches

Having concluded that the district court had admiralty jurisdiction over this action, we now turn to whether the district court erred in holding that the PRPA's breach-of-contract action was barred by laches. The district court so held because the PRPA waited more than eleven years to file its claim. Specifically, the court held that the PRPA's commencement of this action in 2003, "when [the PRPA] knew at least since 1992 [that] 'La Isla Nena' had not been re-sunk and [] was re-floated and navigated to Cataño," constituted "excessive and unreasonable" delay and economically

-11-

prejudiced Defendants.  The PRPA does not dispute this delay, conceding that "12 years elapsed since the execution of the Contract."  Nevertheless, the PRPA argues that laches does not apply because the Contract was for professional services and was therefore subject to a fifteen-year statute of limitations under Article 1864 of the Civil Code of Puerto Rico, 31 P.R. Laws Ann. § 5294.[9]

        "In an admiralty case, maritime law and the equitable doctrine of laches" – not federal or state statutes of limitations – "govern the time to sue."  TAG/ICIB Servs., Inc. v. Pan American Grain Co., Inc., 215 F.3d 172, 175 (1st Cir. 2000); accord Puerto Rican-American Ins. Co. v. Benjamin Shipping Co. Ltd., 829 F.2d 281, 283 (1st Cir. 1987); Pierre v. Hess Oil Virgin Islands Corp., 624 F.2d 445, 450 (3d Cir. 1980) ("[D]elay in bringing suit on an admiralty claim is barred by laches, not by any statute of limitations."); Hill v. W. Bruns & Co., 498 F.2d 565, 568 (2d Cir. 1974) ("In an admiralty suit state statutes of limitations are not strictly applied; instead, the doctrine of laches controls."); see also The Key City, 81 U.S. 653, 660 (1871) ("[W]hile the courts of admiralty are not governed in [cases involving the enforcement of maritime liens] by any statute of limitation, they adopt the principle that laches or delay in the judicial enforcement of

_____

[9] Article 1864 of the Civil Code of Puerto Rico states, in relevant part, that "[a] personal [action] . . . for which no special term of prescription is fixed, [shall lapse] after fifteen (15) years."

-12-

maritime liens will, under proper circumstances, constitute a valid defence.").[10]

While we look to the limitations period contained in the most analogous federal or state statute in order "to establish burdens of proof and presumptions of timeliness and untimeliness," the focus of our inquiry is "whether the plaintiff's delay in bringing suit was unreasonable and whether defendant was prejudiced by the delay." TAG/ICIB Servs., Inc., 215 F.3d at 175. Even assuming that the fifteen-year statute of limitations is the most analogous one in this case[11] – a matter on which we take no view – the fact that the PRPA filed its action against Defendants within

---

[10] Admiralty's application of the doctrine of laches in lieu of statutes of limitations is traceable to proceedings in equity, in which "[s]tatutes of limitation had no application," and where "the judicially created doctrine of laches required the court to weigh the reasons for prejudicial delay." Alan L. Adlestein, Conflict of the Criminal Statute of Limitations with Lesser Offenses at Trial, 37 Wm. & Mary L. Rev. 199, 257 n.249 (1995); see also Cornetta v. United States, 851 F.2d 1372, 1375 (Fed. Cir. 1988) ("The doctrine of laches emerged in an era when equity courts were not bound by statutes of limitations."). Federal courts sitting in admiralty "traditionally have been, and still are, governed by formal Admiralty Rules and by a body of judge-made remedial law [which] . . . has borrowed much from equity, including the rule of laches, and the employment of local statutes of limitations 'by analogy' where not inconsistent with admiralty principles." Alfred Hill, State Procedural Law in Federal Nondiversity Litigation, 69 Harv. L. Rev. 66, 115 (1955).

[11] In their motion for summary judgment, Defendants argued that the two-year statute of limitations applicable to salvage contracts under 46 U.S.C. § 730 should apply here. Section 730 states, in relevant part, that "[a] suit for the recovery of remuneration for rendering assistance or salvage services shall not be maintainable if brought later than two years from the date when such assistance or salvage was rendered."

this period of time does not save the action from being barred by laches. Rather, this fact merely shifts the burden of proving unreasonable delay and prejudice onto Defendants.

The uncontested facts demonstrate that the PRPA knew at least since 1992 that La Isla Nena had not been re-sunk and was instead moored at a shipyard in Cataño. Nevertheless, as noted by the district court, "the record is devoid of any evidence to show plaintiffs made any extra-judicial or judicial effort during the eleven (11) year-period to request from defendants the specific performance of the contract." In light of this undisputed evidence of inaction on the part of the PRPA, and the absence of any reasonable explanation for such inaction, we agree with the district court that the PRPA's eleven-year delay in bringing this action was unreasonable. See Cornetta, 851 F.2d at 1375 ("The doctrine of laches . . . [i]s premised on the maxim vigilantibus non dormientibus aequitas subvenit, equity aids the vigilant not those who slumber on their rights.").

It is also undisputed that in 1998, approximately four years after Defendants refloated La Isla Nena and moored it at the shipyard in Cataño, the vessel became partially sunk again. Defendants argue that they would be prejudiced if the PRPA were to "obtain a free second refloat of 'La Isla Nena' at no cost to the PRPA." We agree with the district court that Defendants would unquestionably be prejudiced by the cost of a second re-float. We

-14-

conclude, therefore, that the district court did not err in applying the laches doctrine to bar the PRPA's action.

## V.

For the foregoing reasons, the district court's judgment granting Defendants' motion for summary judgment and denying the PRPA's Motion to Alter/Amend, is **<u>affirmed</u>**. Costs are taxed against the PRPA.