**Marcelle Jean PIERRE**

v.

**HESS OIL VIRGIN ISLANDS CORPORATION.**

**Appeal of Marcelle Jean Pierre.**

**Appeal of Hess Oil Virgin Islands Corporation.**

Nos. 78–2157, 78–2158.

United States Court of Appeals, Third Circuit.

Argued April 21, 1980.

Decided June 25, 1980.

---

Harry A. Ezratty, San Juan, P. R., with whom Robert H. Ruskin, Christiansted, V. I. was on the brief, argued for appellant in No. 78–2157.

Alexander A. Farrelly, Charlotte Amalie, St. Thomas, V. I. with whom Birch, de Jongh & Farrelly, Charlotte Amalie, St. Thomas, V. I. were on the brief, argued for appellant in No. 78–2158.

Before ADAMS, MARIS and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

MARIS, Circuit Judge.

These are appeals from a final judgment of the District Court of the Virgin Islands. The plaintiff, Marcelle Jean Pierre, a permanent resident of St. Croix, had been em-

ployed by the defendant, Hess Oil Virgin Islands Corporation as a seaman. He brought the present civil action in admiralty to recover overtime and vacation pay which he alleged to be due him. The district court awarded him $408.98 in vacation pay but denied his claim for overtime pay. Both parties have appealed.

■ In connection with its petroleum refinery operation in St. Croix, the defendant operates a fleet of tugboats to assist vessels to enter and leave its harbor at Limetree Bay and for general service in the Caribbean Sea. It was in the operation of these tugboats that the plaintiff was employed from February 11, 1970, to January 15, 1972, as a deckhand. The defendant's tugboats were registered in the Republic of Panama and flew the Panamanian flag. The district court accordingly held, and we agree, that under the traditional rules of maritime law the Panamanian law governs the employment agreement between the parties which is involved in this litigation. *Lauritzen v. Larsen*, 345 U.S. 571, 584, 586, 73 S.Ct. 921, 929, 930, 97 L.Ed. 1254 (1953); *Grivas v. Alianza Compania Armadora, S. A.*, 276 F.2d 822 (2d Cir. 1960).

■ The plaintiff was employed at the fixed sum of $600 per month, later increased to $660 per month. The employment agreement was oral but it is clear that the plaintiff understood that his employment was on a monthly basis for a fixed sum of $600 and that it was not on an hourly basis. Thus, the plaintiff testified:

"A. Well, I asked him [Captain Ambjor who hired him] if it is an hourly wage and he said no, it is a lump-sum system, they are working by the month now."

Plaintiff now contends, however, that he was, nonetheless, entitled to overtime pay in addition to his monthly wage under the Panamanian law. Both parties agree that he was also entitled to vacation pay under that law and the award of $408.98 by the court to the plaintiff on this score is not contested by the defendant. The defendant strongly asserts, however, that the plaintiff, as an employee on a fixed monthly wage,

was not entitled to overtime pay under the law of Panama. The district court held that under the Panamanian law a seaman employed for a fixed sum per month was not entitled to overtime pay in addition, and it, accordingly, denied the plaintiff's claim for such pay. We reach the same conclusion.

It is said by Dr. Arturo Hoyos of the University of Panama in his article on the Labour Law of Panama, Part I, The Individual Employment Relationship, Art. 399 (4 International Encyclopaedia for Labour Law and Industrial Relations, 1979, p. Panama–132):

> "399. The relations between employers and workers on ships which are devoted to international service are governed in general by the provisions of the L[abour] C[ode] concerning all types of employees and especially by the provisions on this type of workers. . . ."

The provisions of the Panamanian law thus applicable are contained in the Panamanian Labor Code, Law No. 67 of November 11, 1947, as amended by Law No. 7 of January 26, 1950.[1] The provisions which appear pertinent follow:

> Law No. 67 of November 11, 1947
>
> PART I. Individual Contracts of Employment
>
> 7. An individual contract of employment shall mean an agreement, whether oral or in writing, whereby a person binds himself to give his services to another or to carry out work for another under his constant supervision and in return for remuneration or a wage.
>
> 16. Every contract of employment shall be drawn up in writing . . .
>
> 19. In the event of the absence of the contract in writing required by this Code the employer shall be deemed to be responsible, and the facts or circumstances alleged by the employee which should be contained in the said contract shall be presumed to be correct.[2]
>
> PART XII. Employment at Sea and on Navigable Waterways
>
> 125. A seaman may be signed on under an agreement:
>
> (1) for a fixed sum per month or per voyage; or
>
> (2) for a share in the cargo or in the profits. . . .
>
> PART XIII. Hours of Work
>
> 150. The solar day shall be divided into the following working periods:
>
> (a) day period: from 5 a. m. to 7 p. m.;
>
> (b) night period: from 7 p. m. to 5 a. m.
>
> 151. Hours of work within the above-mentioned working periods shall be deemed to be hours of day work and hours of night work respectively.
>
> If the daily hours of work comprise more than three hours of the night period, they shall be deemed to be night work.
>
> A working day which includes hours of both working periods shall be deemed to be a mixed working day.
>
> 152. In the case of day work the maximum daily hours of work shall be eight hours and the corresponding working week shall not exceed forty-eight hours.
>
> In the case of night work the maximum daily hours of work shall be seven and the corresponding working week shall not exceed forty-two hours.

1. The Ministerial Decree No. 252, published February 18, 1972, which approved the Labor Code of December 30, 1971, did not enter into force until April 2, 1972, and, accordingly, did not affect the plaintiff's employment since it ended January 15, 1972.

2. To quote again from Dr. Hoyos' treatise:

   "160. If the parties do not form a written labour contract the sanction is not the nullity of the agreement but a presumption in favour of the employee. In the absence of a written contract, when it is required, facts and cir- cumstances alleged by the employee *which should appear in the labour contract*, are presumed to be true (Article 69 of the L[ab- our] C[ode of 1972, which is the counterpart of Article 19 of the Labour Code of 1947]). This presumption may be rebutted by evidence that does not admit a reasonable doubt. This presumption does not extend to facts or circumstances which are not required to appear in the individual labour contract, as for example overtime work."

In the case of a mixed working day the maximum daily hours of work shall be seven and a half hours and the corresponding working week shall not exceed forty-five hours.

The break in the middle of the working day shall not be less than half an hour.

Law No. 7 of January 26, 1950

6. Every member of the crew of a ship whose actual hours of work exceed the statutory limits or such lower limits as may be fixed by agreement shall be entitled to overtime at the rate of one and one-quarter times his normal wage.

It will be seen that Law No. 67 of 1947, Art. 152, provides for maximum daily and weekly hours of work and Law No. 7 of 1950, Art. 6, provides that every member of the crew of a ship whose actual hours of work exceed the statutory limits shall be entitled to overtime at one and one-quarter times the normal rate. These provisions would seem clearly to apply to seamen employed at an hourly rate of pay, and it appears that the defendant's seamen who were employed prior to July 1969 were so paid. After that date, however, the defendant employed its seamen at a fixed monthly rate, $600 in the case of the plaintiff, later increased to $660. The question with which we are confronted, accordingly, is whether seamen employed at a fixed sum per month, as was the plaintiff are, nonetheless, entitled to overtime pay for actual hours of work exceeding the statutory maximum set by Art. 152.

In considering this question, we note that the law provides alternative plans for the employment of seamen. They may, of course, be employed, as the defendant's seamen were originally, at an hourly wage as in the ordinary case of labor on land. In that case they are employed on terms similar to labor generally and are entitled undoubtedly, under Law No. 7 of 1950, Art. 6, to overtime pay if earned. Or, as alternatives, they may be employed for a fixed sum per month, for a fixed sum per voyage, or for a share in the cargo or the profits (Art. 125). Certainly seamen employed for a share in the cargo or the profits, as authorized by Art. 125, can have no claim for overtime pay and the provisions of Art. 6 of Law No. 7 of 1950 with respect to such pay cannot apply to them. Thus, it is clear that Art. 6 of Law No. 7 of 1950, although it provides that "every member of the crew of a ship" whose hours of work exceed the statutory maximum is entitled to overtime pay, is *not* applicable in every case. We think that those seamen employed for a fixed sum per month or per voyage under the same statutory provision (Art. 125) as those employed for a share in the cargo or the profits are also excepted from the application of Art. 6 of Law No. 7 of 1950. The use in Art. 125 of the adjective "fixed" rather than, say, "basic" in defining the monthly pay is highly significant in this connection since it indicates that the compensation for the labor to be performed during the month has been definitely fixed in advance.

Moreover, we think it reasonable, in view of the nature of maritime employment, that the law permits an exception, in the case of seamen employed by the month, to the overtime provisions which are generally applicable. While in port, seamen may be given shore leave, but when they are at sea, they must perforce remain with their vessel at all times. While ordinarily actively at work only when the watch to which they have been assigned is on duty, they are, nonetheless, subject to call to duty at any time in case of special need. At other times, however, they are free to sleep, eat and engage in other personal activities while on board. Thus seamen are in a real sense subject to call to duty at any time and must take their free time when it is available. A regime of this sort doubtless makes it very difficult to determine during just what hours a seaman not on watch is, nonetheless, subject to such duty as prevents him from conducting his personal affairs. It may well be for this reason, as well as for others, that the Panamanian law permits the parties to agree upon a fixed sum per month to cover all the seaman's performance of duty aboard ship. And, given the nature of maritime employment, it is reasonable to conclude that both the plaintiff

and the defendant understood that the work for the performance of which the plaintiff was engaged would entail overtime. That possibility should have been and doubtless was reflected in the fixed sum per month agreed to. It would be unfair, therefore, to require the defendant to pay overtime wages in addition to the fixed sum. This doubtless explains why plaintiff did not request overtime during the course of his employment or even at the time that he left it.

■ Some point is made by the plaintiff of the fact that his contract of employment was oral and, therefore, in violation of Art. 16 of the Panamanian Labor Code of 1947. The Code, however, contemplates that an employment contract may, nonetheless, be oral (Art. 7) in which case the terms of the agreement alleged by the employee are presumed to be correct (Art. 19). Here, however, there is no dispute as to the terms of the agreement. For according to the plaintiff's own testimony it was to be for a monthly "lump sum" and not an hourly wage. Since the agreement was for a fixed monthly sum and not for an hourly wage, there is no merit in plaintiff's further argument that the defendant deceived him by not informing him of his right to overtime pay under his employment agreement. Since, as we have pointed out, there was no such right, the defendant certainly had no obligation to refer to it.

The plaintiff contends that, even if he is not entitled to overtime pay under Panamanian law, his claim for such pay should be granted in that the complainants in the cases consolidated for trial with his were permitted recovery and he is entitled to wages equal to theirs.

The plaintiffs in the three other cases which were consolidated with the present case were nonimmigrant aliens who were permitted to enter the Virgin Islands temporarily to work for the defendant pursuant to the approval by the Immigration and Naturalization Service of the defendant's petition for their entry, procedures established under the Immigration and Nationality Act of 1952, 8 U.S.C.A. §§ 1101–1503, and the regulations promulgated thereunder.

The district court held that the defendant's petition granted by the Service constituted a binding agreement between them enforceable by the nonimmigrant aliens, third-party beneficiaries of the agreement, against the defendant. Since the defendant represented in its petition for the admission of the nonimmigrant aliens that it would pay them time and one-half for overtime work, the district court determined that those plaintiffs were entitled to overtime pay, even though, just as the plaintiff in the present case, they had contracted individually with the defendant to work for a fixed monthly wage.

Insofar as the plaintiff's contention that he is entitled to equal treatment with the nonimmigrant aliens is based on the provisions of and the policies underlying the laws of the Virgin Islands and the United States regulating, for the protection of resident workers, the admission of aliens for temporary work, we need only reiterate that the plaintiff's claim is governed by Panamanian law and not by the laws of the Virgin Islands or the United States. As we have indicated, the law of Panama governs the wage agreements of seamen on Panamanian vessels.

■ The plaintiff concedes, as he must, that a resident, such as himself, cannot be a third-party beneficiary of a contract concerning nonimmigrant aliens, entered into under the immigration law, nor does he assert any other contractual basis for his claim. There being no discernible statutory, contractual or other basis for his claim to equal treatment with the nonimmigrant aliens, the claim must fail as the district court held. We, thus, do not reach the question of whether the district court correctly decided the third-party beneficiary theory of recovery of overtime pay advanced in the consolidated cases. We, accordingly, express no opinion upon that question.

■ Finally, the plaintiff asserts that in disposing of the four consolidated cases in

one opinion the district court failed to make adequate findings of fact and conclusions of law with respect to his particular case. It is true that the opinion of the district court concentrates its discussion on the case of De Windt, another plaintiff. But we are satisfied that adequate findings and conclusions were made in the opinion with respect to the present plaintiff's case and that they support the court's conclusion with respect to his case. It was not required under Rule 52 of the Federal Rules of Civil Procedure that the findings and conclusions be stated separately.

■ The defendant has raised the defense of the statute of limitations as a bar to plaintiff's claim. It refers to Art. 623 of the Panamanian Labor Code which prescribes labor rights and actions within a year. In *Bournias v. Atlantic Maritime Co.,* 220 F.2d 152 (2d Cir. 1955), the court held that this statute was procedural and hence under accepted principles of the conflict of laws was not applicable to bar an admiralty suit brought in a district court in New York. For the reasons ably stated in Judge Harlan's opinion for the court in that case, Art. 623 is equally inapplicable to bar the plaintiff's present suit. Indeed, the fact that the article appears in the Second Book of the Labor Code entitled "Adjective Law" rather than in the First Book entitled "Substantive Law" is confirmatory of this.

■ The defendant errs, however, in assuming that any statute of limitations is applicable to bar a claim in admiralty, since delay in bringing suit on an admiralty claim is barred by laches, not by any statute of limitations. Doubtless, in deciding whether the plaintiff has been guilty of laches, the court will consider as a helpful guide the statute of limitations which would be applicable if the case were an ordinary civil action. That statute would, of course, be the statute of limitations of the Virgin Islands which allows a plaintiff six years in which to bring a suit in an action upon a contract. 5 V.I.C. 31(3)(A). The plaintiff's claim was brought within six years after it accrued. Accordingly, defendant had the burden of proving laches, i. e., inexcusable

delay in light of the case's equities and prejudice to itself. *Gardner v. Panama R. Co.,* 342 U.S. 29, 31, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951); *Churma v. United States Steel Corp.,* 514 F.2d 589, 593 (3d Cir. 1975). We agree with the district court that the defendant failed to prove the existence of either element.

The judgment of the district court will be affirmed.