William **BROOKS**, et al.

v.

**HESS OIL V.I. CORP.**, Appellant.

No. 86–3048.

United States Court of Appeals,
Third Circuit.

Argued Dec. 4, 1986.

Decided Jan. 12, 1987.

Gary J. Wolfe (Argued), Hill, Betts, & Nash, New York City, Alexander A. Farrelly, Birch, de Jongh & Farrelly, St. Thomas, Virgin Islands, for appellant.

Harry A. Ezratty (Argued), San Juan, Puerto Rico, Gerald T. Groner, St. Croix, Virgin Islands, for appellees.

Frank L. Wiswall, Jr., Reston, Virginia, for the Republic of Liberia as amicus curiae.

Before SLOVITER, STAPLETON and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal from an interlocutory order [1] presents an unusual and knotty question requiring a United States federal court to decide whether an American company violated Liberian law in paying overtime wages due its merchant seamen under a collective bargaining agreement (CBA). Hess Oil Virgin Islands Corp. (HOVIC), the employer, is an American company in the business of refining petroleum and uses barges of Liberian registry in its lightering operations off St. Croix, Virgin Islands. The appellees (plaintiffs) are seamen employed by HOVIC in the lightering operations who sued for overtime pay they claimed due them under Liberian law. The district court granted plaintiffs' motion for partial summary judgment holding that under applicable Liberian law the plaintiffs were entitled to time and a half for overtime worked regardless of provisions to the contrary in the collective bargaining agreement. We vacate and remand.

### I.

Plaintiffs, together with other seamen employees of HOVIC, commenced an overtime action in November 1976 and sought overtime allegedly owing under both Panamanian and Liberian law, as well as under several provisions of United States law. However, based on this court's decision in *Pierre v. Hess Oil Virgin Islands Corp.*, 624 F.2d 445 (3d Cir.1980), that under Panamanian law seamen may be paid at fixed monthly rates, the parties agreed to dismiss the overtime claims of the Panamanian flag seamen.

The remaining plaintiffs, all members of the Seafarers International Union AFL/CIO (the Union), are parties to a series of collective bargaining agreements

with HOVIC. The agreement effective from July 27, 1973, to January 31, 1975, provided for a specified base wage rate, payable twice monthly. Art. X, § 1, Add. A. Under that agreement, a seaman was to be available for work in local service for 24 hours of each day, following which he would have the next 24 hours off with pay at a monthly rate. In the event a vessel engagement prevented his receiving the 24 hours off, the seaman would be compensated by receiving equal time off at HOVIC's convenience within the following 60 days. Local service was defined as service in Limetree Bay, St. Croix, or adjacent waters, or between the Virgin Islands, or a voyage of up to 200 miles from St. Croix. Art. IX, § 1. The agreement further provided that a seaman in service on a watch standing basis would be compensated at his regular base rate plus an additional 20 percent of his monthly wage for each day at sea. Art. IX, § 2. The agreement did not contain any provision other than Article IX, §§ 1 and 2 relating to overtime pay.

Thus, under the agreement a seaman could work a maximum of 15 days per month. For those 15 days, an ordinary seaman received in his first year of service in 1973, $730 or $42 per day.

Commencing on February 1, 1975, the CBA by amendment in relevant part provided:

1. Ordinary seamen were to be available for work each day for 24 consecutive hours. The regular working day was established as 12 consecutive hours within such working period.

2. Ordinary seamen were given the next 24 hours off with pay for each regular working day worked. If service prevented the allowance of such 24 hours, the seaman received 24 hours off at

**1.** In entering its amending order of November 20, 1985, the district court stated that its partial summary judgment involved a controlling question of law as to which there was a substantial ground for difference of opinion and that an immediate appeal might materially advance the ultimate termination of this litigation. In seeking permission from this court to appeal, the appellant requested this court to decide whether the district court erred in holding that the seamen employed on HOVIC's lightering barges had a right under the Liberian Labor Law to overtime wages at a rate of time and one-half their normal rate. By order dated January 3, 1986, this court granted permission to appeal pursuant to 28 U.S.C. § 1292(b).

HOVIC's convenience within the following 60 days.

3. Ordinary seamen received as compensation for their working days of 12 consecutive hours a specified monthly wage (plus the time off). For any work performed in excess of 12 consecutive hours in the 24 hour period, seamen received in addition a specified hourly rate. Art. IX, § 1.

Thus, until January 31, 1975, a seaman received a monthly wage of $730 and 24 hours off for each 24 hours he was available for work. As of February 1, 1975, a seaman received a monthly wage of $955 and 24 hours off for each 12 hours worked in a consecutive 24 hour period. In addition, the seaman received $5.10 for each overtime hour worked.

Although the agreements contained a grievance procedure, the seamen never submitted their overtime claims to the Union and the Union never presented any grievances to HOVIC in support of the seamen's claims to overtime.

■ HOVIC asserts that because the Liberian Maritime Law[2] does not define overtime rates the plaintiffs' right to overtime must be determined solely by reference to the CBA. The plaintiffs, on the other hand, assert that the overtime provisions of the Liberian Labor Law should be applied to them or, at the least, that the overtime provisions of the Liberian Labor Law should be used to interpret or to supplement the overtime provisions of the Liberian Maritime Law. They maintain that under the Liberian Labor Law they are entitled to time and a half for overtime work. Plaintiffs claim substantial damages because commencing from 1970 to the filing of their complaint on November 18, 1976, HOVIC illegally required plaintiffs to work aboard its barges in excess of forty per hours per week and/or in excess of eight hours per day. The district court held in favor of the plaintiffs on their motion for partial summary judgment and HOVIC appeals.

## II.

### A.

■ Preliminary to a discussion of the merits, we turn to HOVIC's contention that plaintiffs' claim is barred by Liberia's three-year statute of limitations.[3] In deciding this question, all parties agree that we are bound by basic conflict of law principles, which require that a court apply the forum's procedural rules, including the statute of limitations, except where the foreign jurisdiction has an applicable substantive limitations statute "which bars the right and not merely the remedy." Re-

---

**2.** It is undisputed that Liberian law controls this case; however, the parties disagree over which of several statutes apply, as well as how those statutes affect their collective bargaining agreement. Although the parties concede that there is Supreme Court authority for the proposition that when a United States court exercises its jurisdiction over a foreign flag vessel in civil matters the law of the flag controls, *see Windward Shipping (London) Ltd. v. American Radio Ass'n AFL-CIO*, 415 U.S. 104, 94 S.Ct. 959, 39 L.Ed.2d 195 (1974); *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963), plaintiffs assert that this rule should be softened where, as here, the court is dealing with an American employer, American seamen, American waters, and an American union and collective bargaining agreement. We see no logical reason to conclude that at some arbitrary point the number of American contacts outweighs the rule that the law of the flag controls the internal order and economy of foreign flag vessels, and

accordingly we decide this case under Liberian law without reference to the various provisions of American labor law urged by plaintiffs.

**3.** Chapter 10 of the Liberian Maritime Law contains a three-year limitations statute which HOVIC asserts is the applicable statute of limitations:

SECTION 360

*Time Limit.*– (1) The following rights of action are subject to one year's prescription: (a) Claims arising out of the Shipping Articles;

(2) The following rights of actions are subject to two years' prescription:

(a) The right of action for death of a seaman caused by wrongful act, neglect or default on the high seas;

\* \* \* \*

(c) All other tort claims;

(3) All other claims are subject to three years' prescription.

statement (Second) of Conflict of Laws §§ 142, 143 (1971). According to the plaintiffs, Liberia's Maritime Law § 360 is procedural, and therefore the applicable law is not the three-year limitation found in section 360, but rather, the doctrine of laches. *See Pierre v. Hess Oil Virgin Islands Corp.*, 624 F.2d 445, 450 (3d Cir.1980). Though not strictly a statute of limitation, the equity doctrine of laches bars a claim by those who "sleep on their rights," and if laches applies in this case all parties appear to concede that the court should be guided by the Virgin Islands six-year limitations period for breach of contract actions, 5 V.I.C. § 31(3)(A), as the appropriate laches period. *See Pierre*, 624 F.2d at 450. The plaintiffs sued on their claims within six years after they accrued.

In *Pierre v. Hess Oil Virgin Islands Corp., supra,* HOVIC raised the same statute of limitations defense that it raises here, except that in *Pierre* the defense was based upon Panama's one-year statute of limitations rather than upon Liberia's three-year statute. In rejecting HOVIC's argument that the statute was substantive and therefore applicable, the court cited *Bournias v. Atlantic Maritime Co.*, 220 F.2d 152 (2d Cir.1955), which held that Article 623 of the Panamanian Labor Code was procedural. Hence, under accepted principles of conflict of laws the statute was not applicable to bar an admiralty suit brought in a district court in New York. For the reasons ably stated in Judge Harlan's opinion for the court in that case, the court concluded that Article 623 was equally inapplicable to bar the suit in *Pierre.*

In *Pierre*, we noted that it would be error to assume that any statute of limitations would be applied to bar a claim in admiralty rather than the doctrine of laches:

> Doubtless, in deciding whether the plaintiff has been guilty of laches, the court will consider as a helpful guide the statute of limitations which would be applicable if the case were an ordinary civil action. That statute would, of course, be

the statute of limitations of the Virgin Islands which allows a plaintiff six years in which to bring a suit in an action upon a contract.... Accordingly, defendant had the burden of proving laches, i.e., inexcusable delay in light of the case's equities and prejudice to itself.

*Id.* at 450.

In seeking to distinguish *Pierre* from the present case, HOVIC urges that whereas in *Pierre* the statute at issue appeared in a portion of the labor code entitled "Adjective Law" rather than in the portion entitled "Substantive Law," in this case § 360(3) appears in chapter 10 of Liberia's Maritime Law rather than in the Civil Procedure Law set forth in Chapter 2 of Title I. The Civil Procedure Law lists "limitations of actions" among its procedural rules but does not deal with seamen's actions. This difference is not sufficient to distinguish *Pierre*, however, because *Pierre* did not depend on the appearance of the statute in question as part of the "Adjective Law." Rather, the statute's incorporation as part of the "Adjective Law" was merely "confirmatory." *See id.* at 450. Thus, here, as in *Pierre* and also *DeWindt v. HOVIC*, 15 V.I. 22, 34–36 (D.V. I.1978), the controlling principle is laches rather than the three year statute of limitations, and absent a showing of prejudice or inexcusable delay the plaintiffs' claim is not barred. *Cf. DeWindt*, 15 V.I. at 36 ("The forum uses its own law, not the law of the foreign jurisdiction, to determine whether a foreign limitations statute bars the right and not merely the remedy.").

**B.**

We now turn to the merits of the plaintiffs' claim. The rights and obligations of merchant seamen, such as the plaintiffs, with respect to the terms and conditions of their employment are governed under the Liberian Maritime Law by virtue of section 290(1) of that law (a/k/a Merchant Seamen's Act, 1964).[4] With respect to over-

---

**4.** Section 290(1) provides:

*Application.*—(1) The rights and obligations

time, section 341 of the Maritime Law provides: [5]

Working Hours, Overtime.—In relation to members of the crew on a vessel engaged in foreign trade:

(a) The normal hours of work in port and at sea shall be eight per day;

(b) Work performed over and above the eight hour period shall be considered as overtime and shall be compensated for at overtime rates;

&ast;   &ast;   &ast;   &ast;   &ast;   &ast;

No formula for calculating overtime rates is supplied, however, and therefore HOVIC contends that plaintiffs' right to overtime must be determined solely by reference to the CBA.[6]

The plaintiffs, on the other hand, submit that Liberian Labor Law, which provides for a higher overtime rate, should be used to supplement Liberian Maritime Law where the former is not in conflict with the latter. Section 701(1) of the Liberian Labor Laws provides that no employer shall require any employee to work longer than eight hours in any one day or forty-eight hours in any one week unless the hours worked in excess thereof are paid in accordance with the provisions of Section 703. Section 703 provides:

Work in excess of the number of hours specified in section 701, subsection 1, shall be paid for at a rate not less than fifty percent above the normal rate.

Based upon the above provisions of the Labor Law, the plaintiffs assert that they are entitled to time and a half for their overtime.

Plaintiffs' strongest argument in support of this position is based upon section 2 of the Maritime Law. Section 2 provides that

"[a]ll matters affecting the economy of Liberian Flag ships, including labour relations, shall be governed by the laws of Liberia." According to the plaintiffs, because the laws of Liberia include its labor laws, the Labor Law applies when it is not inconsistent with the Maritime Law. The defendant, however, asserts that section 2 does not incorporate the Labor Law, and that to the extent section 2 does incorporate the Labor Law, it applies only to Liberian citizens, and not to the plaintiffs in this case. None of the plaintiffs are Liberian citizens.

■ With respect to the effect of section 2, the Republic of Liberia's amicus brief supports HOVIC's assertion:

That provision became effective on April 11, 1963, at a time when the picketing of Liberian vessels by U.S. labor unions had become a matter of extremely serious concern to the Government of Liberia, and at a time when the courts of the United States were confronted directly with the issue, which the Supreme Court had first touched upon five years earlier in *Benz v. Compania Naviera Hidalgo, S.A.*, 353 U.S. 138 [77 S.Ct. 699, 1 L.Ed.2d 709] (1957), and which it was soon to decide—squarely upon the doctrine of internal order and economy—in *McCulloch, supra.* It was *this* concern that was the motive for restating in section 2 an elementary but fundamental principle of international law, and not a desire to suddenly import local overtime provisions of domestic Liberian Law into the field of international ocean going maritime transport.

Brief for Amicus at 19. Further, according to the amicus brief all provisions in the Liberian Maritime Law that related to Libe-

---

of every person employed on any ocean going merchant vessel registered under title 22 of the Liberian Code of Laws and any person employing such person shall, with respect to terms and conditions of employment and other matters relating to employment and the internal order of such vessel be governed by this chapter.

5. We reject HOVIC's alternative argument that § 341 of the Maritime Law does not apply be-

cause the barges in question were not involved in "foreign trade." The barges were used off the island of St. Croix in connection with tankers coming to St. Croix from oil fields throughout the world, and therefore the "foreign trade" requirement is clearly met.

6. Section 355 of the Maritime Law expressly permits employers and employees to bargain collectively.

rian seamen on vessels trading from Liberia were removed from the Maritime Law in 1958 and inserted into the Liberian Labor Law in order to remove the provisions which were essentially local in character. *See id.* at 18. Indeed, a review of Liberia's Labor Code convinces us that it is only intended to apply to Liberian citizens, and therefore, we conclude that the plaintiffs in this action are governed exclusively under the Liberian Maritime Law, and not under the Liberian Labor Law.[7]

Our conclusion that the Liberian Labor Law does not control this case is also supported by the public policy with respect to merchant seamen. The Government of Liberia describes this policy in its amicus brief as follows:

> Section 341(b) of Chapter 10 of the Maritime Law, in order to accommodate such unusual labor needs and trading patterns as those in the present case, does not define "overtime rates" but leaves it to the parties to bargain the matter—as they did here in the labor contracts agreed. The Court below, by reading into the Maritime Law the local overtime provision of the Labor Law, would mistakenly deprive the parties of that very necessary latitude intended by the Maritime Law to facilitate the bargaining of seafaring labor contracts when such unusual needs exist.

*Id.* at 21. We also expressed this public policy in *Pierre v. Hess Oil Virgin Islands Corp.,* 624 F.2d 445 (3d Cir.1980), which dealt with a similar provision of Panamanian law. The policy has its roots in the peculiar nature of seafaring operations:

> While ordinarily actively at work only when the watch to which they have been

assigned is on duty, they are, nonetheless, subject to call to duty at any time in case of special need. At other times, however, they are free to sleep, eat and engage in other personal activities while on board. Thus seamen are in a real sense subject to call to duty at any time and must take their free time when it is available. A regime of this sort doubtless makes it very difficult to determine during just what hours a seaman not on watch is, nonetheless, subject to such duty as prevents him from conducting his personal affairs. It may well be for this reason, as well as for others, that the Panamanian law permits the parties to agree upon a fixed sum per month to cover all the seaman's performance of duty aboard ship.

*Id.* at 488–89.

### III.

In light of Liberia's position as to the application of its own laws, the very local nature of Liberian Labor Laws, and the public policy surrounding the difference between merchant seamen and other employees, we hold that the Liberian Labor Law does not govern the non-Liberian seamen's entitlement to overtime wages either directly or as a basis for interpreting the Liberian Maritime Law. The district court did not address, and it is not clear from the record before us, whether plaintiffs claim any overtime violations under the Maritime Law and the CBA.

The judgment of the district court granting plaintiffs' motion for partial summary judgment will be vacated and the case remanded for further proceedings consistent with this opinion.

---

**7.** Our conclusion on this issue is not in any way affected by the letter sent to the plaintiffs by the Liberian Ministry of Labor. In that letter, the Ministry indicated that overtime for "Liberian Seamen[ ]" was to be paid at time and a half in accordance with § 703 of the Labor Law. That letter is wholly unpersuasive, however, because it came in response to a request from the plaintiffs in which the plaintiffs indicated that they were Liberian citizens:

> We are now and have been, during the past few years, involved in a case involving *Liberi-*

*an seamen's* wage claims. We are in need of a certified copy of Chapter 8 of the Liberian Labour Law in order to produce it in an American Court as evidence, and believe *it will be a great help to the Liberian citizens involved.* (Emphasis added).

Therefore, although we in no way decide the applicability of the Liberian Labor Law to Liberian nationals, we conclude that because the Ministry's letter clearly contemplated that it was to be used by Liberian citizens it does not affect the analysis in this case.