German Domingo CARTAGENA, Jose Luis Zamora, Jose Leon Zamora, Julio Cesar de Paz, Francisco Milton Cacheo and Mario Cruz Morales, Plaintiffs,

v.

CHALLENGER COLUMBIA, INC., Equity Steamship Agencies, Ltd., and John P. Emmans, Defendants.

No. 85 Civ. 7116(MEL).

United States District Court, S.D. New York.

May 17, 1988.

As Amended June 27, 1988.

Phillips & Cappiello, P.C., New York City, for plaintiffs.

Dickerson, Reilly & Mullen, New York City, for defendants.

LASKER, District Judge.

Six seamen who were crewmembers on the M/V Ocean Challenger during its final voyage have moved for partial summary judgment against defendants Challenger Columbia, Inc., Equity Steamship Agencies, Ltd., and John P. Emmans, to recover wages and other compensation allegedly owed to them for their services aboard the Challenger.

The facts that follow are not in dispute. At the time relevant to this action, the Challenger, a Panamanian-flag vessel, was owned by defendant Challenger Columbia, Inc. and managed and operated by defendant Equity Steamship Agencies, Ltd. ("Equity"). Defendant John Emmans was president of both Challenger Columbia and Equity Steamship. Five of the six plaintiff seamen—Julio Cesar de Paz, Francisco Milton Cacheo, Mario Cruz Morales, Jose Luis Zamora and Jose Leon Zamora—joined the crew of the Challenger on August 18, 1982. Plaintiff German Domingo Cartagena joined on August 28, 1982. On September 18, 1987, while voyaging in the Caribbean Sea, the Challenger sank. Plaintiffs were rescued by another ship and taken to Trinidad, where they remained until September 30, 1982, when they were repatriated to Guatemala. During their stay in Trinidad, plaintiffs continued to follow the directions of the ship's master and the owner's agent, and they provided the owner with assistance in the investigation of the Challenger's sinking.

On September 30th, the Challenger's master gave each plaintiff a pay voucher signed by the master, setting forth the

amount owed each plaintiff for his services aboard the Challenger, and stating that this amount "must [be] paid in cash in Guatemala."[1] After their return to Guatemala, the plaintiffs requested their wages from the Challenger's crewing agents, but were told that the agents had not received funds from the owner to pay them. The crewing agents telexed Equity on October 22, 1987, requesting clarification of the situation. On October 26, Equity wired back that the owner of the Challenger had not provided Equity with any funds, but that the crewing agents should provide Equity with the names of the seamen and the amounts requested. The telex concluded: "It might take some time but they will be paid and thank you for your cooperation."[2] On November 2, 1982, the crewing agents wired to Equity the information requested. Plaintiffs have never been paid.

Plaintiffs argue that they are entitled to partial summary judgment on the amounts listed on their pay vouchers, and that, in addition, they are entitled by law to certain additional compensation for their services. Defendants respond 1) that Equity may not be held liable for the debts of Challenger Columbia, which is apparently insolvent, and 2) that the crewmen have inflated the sums of money owed them.

## I.

■ Equity's claim that it cannot be held liable for the debts of Challenger Columbia is without merit. The precise issue has already been determined adversely to Equity by a judge of this court. In *Greycas, Inc. v. Panamanian Ship Owning Corp.,* 83 Civ. 5786 (RJW), Judge Ward explicitly held that Equity is the alter ego of Challenger Columbia and various other ship-owning companies and that it is therefore liable for judgments against the vessel owners:

> The fact that the vessel owners [including Challenger Columbia] and Equity are dominated and controlled by the same individual, John P. Emmans; that the vessel owners and Equity have certain officers in common; that Equity dominated or controlled the affairs of the vessel owners to the extent that the latter had little or no independent existence; and that the vessel owners and Equity are completely intermingled; that the vessel owners maintained no books or records or bank accounts; that the books and records of Equity were, in fact, the books and records of the vessel owner, warrants piercing the corporate veil to the extent of disregarding the separate corporate entities of the vessel owners and Equity and treating them as a single corporate entity responsible for the obligations to [plaintiff].[3]

Under basic principles of issue preclusion, this determination, made in an action in which both Equity and Challenger Columbia were defendants and had every incentive to litigate the issue vigorously, is binding here. Furthermore, Judge Ward's determination is consistent with Panamanian law,[4] which holds that where a middleman "engages ... the services of other persons to perform some work in favor of an employer," both the employer and the middleman are jointly and severally liable "for the fulfillment of pending obligations in favor of the workmen."[5] Here, it is undisputed that Equity had the duty to enlist and

1. Plaintiffs' Statement Pursuant to Local Rule 3(g), Exhibits 1–6 (pay vouchers).

2. Plaintiffs' 3(g) Statement, Exhibit 8 (Telex of Oct. 26, 1982).

3. Plaintiffs' 3(g) Statement, Exhibit 10 at 14 (Transcript of oral decision of Judge Ward, Aug. 19, 1985).

4. It is assumed that Panamanian law applies to this action concerning wages owed to seamen on a Panamanian flag vessel. *See Pierre v. Hess Oil Virgin Islands Corp.,* 624 F.2d 445, 446 (3rd Cir.1980); *Vinuela v. Britanis,* 647 F.Supp. 1139, 1143 (S.D.N.Y.1986). Both parties, without addressing the issue of applicable law, cite Panamanian law in their memoranda and affidavits.

5. Plaintiffs' 3(g) Statement, Exhibit 17 (Articles 87–90 of the Labor Code of the Republic of Panama).

manage crewmen for the Challenger.[6]

## II.

Turning to the issue of the amount of money owed to the crewmen, plaintiffs' claims fall into the following categories: actual wages earned, compensation for termination of employment contract, vacation pay, overtime, compensation for the value of property lost when the Challenger sank, liquidated damages, interest and attorney's fees. Defendants concede that the crewmen are owed wages in the amounts stated in their pay vouchers, but challenge the other claims in whole or in part. Plaintiffs claim that they are collectively entitled to $15,290.88, plus liquidated damages, interest and attorney's fees; defendants argue that plaintiffs are entitled only to $3,084.75.

As to termination compensation and vacation pay, defendants argues that under the Labor Code of the Republic of Panama ("PLC") they are entitled to pay the crewmen *less* than the amounts for these claims stated in the pay vouchers.[7] Under PLC Articles 225 and 225(a), a workman who has served an employer for less than a year "shall be entitled to receive from the employer" upon termination "the wage equivalent to a week for every three months' work." Under PLC Article 262, crew members of a Panamanian vessel engaged in international trade are entitled to annual vacation leave of "not less than twelve working days for each year of service."

Plaintiffs argue persuasively, however, that these articles of the PLC merely set the minimum rate—rather than a ceiling—for payment of termination compensation and vacation pay. Here, plaintiffs' pay vouchers explicitly state that they are entitled to compensation and vacation pay in stated amounts, plaintiffs have sworn in their affidavits that they earned the amounts stated in their pay vouchers, and defendants have submitted no evidence that might raise a material issue of fact as to the accuracy of the figures for compensation and vacation pay listed in the pay vouchers. In fact, defendants have submitted no evidence indicating that they have ever before denied either the accuracy of the pay voucher figures or plaintiffs' entitlement to these sums in the five years since the Challenger's master issued the vouchers. Under these circumstances, plaintiffs are entitled to summary judgment on their claims for termination compensation and vacation pay in the amounts listed in the vouchers.[8]

On the claims for overtime and lost belongings, plaintiffs argue that they are entitled at the least to the sums stated in the pay vouchers, but assert that they are actually entitled to recover more money for these claims.

The Challenger master included on each pay voucher a figure for overtime payment, which compensated the plaintiffs for each hour of overtime worked at a rate of $1.00 per hour. Defendants do not dispute that plaintiffs are entitled to these sums.

Plaintiffs argue, however, that they are entitled to overtime payment at a higher rate: $1.08 per hour for Jose Luis Zamora; $2.10 per hour for Cartagena, Jose Leon Zamora, de Paz and Cruz; and $2.71 per hour for Cacheo. Plaintiffs reason as follows: PLC Article 261 states that "[a]ll members of Panamanian vessels engaged in international service, whose effective

---

**6.** The issue whether defendant Emmans may be held personally liable for the debts of Challenger and Equity, which defendants raised but neither party briefed, is not addressed in this decision.

**7.** *See* Affidavit of John P. Emmans, Exhibit A (PLC Articles 225 and 262).

**8.** In addition, the statement submitted by defendants purportedly pursuant to Local Civil Rule 3(g) does not provide the required "separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." Nor have the defendants overcome the statutory presumption under Panamanian law set forth in PLC Article 69, which states that "[i]n the absence of a written contract, facts and circumstances alleged by the workman which should appear in said contract, will be presumed to be true," although "[t]his presumption may be rebutted by evidence that does not admit a reasonable doubt." Plaintiffs' Supplemental Statement Pursuant to Local Rule 3(g), Exhibit 23 (PLC Article 69).

work time exceeds the legal limits ...,
shall be entitled to be paid overtime with a
surcharge of not less than 25% on the
wages accrued." [9]  Under PLC Article 31,
the maximum number of regular hours pri-
or to overtime is eight hours per day-shift,
with a maximum of forty-eight hours in a
week.[10]  Based on these two provisions,
plaintiffs argue that their overtime pay-
ments must be calculated as follows: a)
each seaman's monthly wage should be di-
vided by 4.33 (the average number of
weeks in a month) to arrive at a weekly
wage; b) that wage should be divided by 48
to determine the regularly hourly wage;
and c) the hourly wage should be increased
by 25% to reach the hourly overtime rate.[11]

■ While this method of calculation is
reasonable on its face, and defendants do
not address the issue, plaintiffs' method-
ology does not comport with *Vinuela v.
Britanis*, 647 F.Supp. 1139 (S.D.N.Y.1986),
the only decision in this circuit which dis-
cusses the issue of overtime pay under the
PLC for seamen who receive a fixed month-
ly salary.  In *Vinuela*, the district court
was faced with the issue whether a seaman
was entitled to overtime pay in addition to
his fixed monthly salary.  Based on a
record which included affidavits from an
expert on Panamanian law, supported by
legal opinions from Panamanian govern-
ment officials on the applicability of vari-
ous provisions of the PLC, including those
at issue here, the *Vinuela* court concluded
that seamen who receive a fixed monthly
salary are indeed entitled to PLC Article
261's 25% surcharge for overtime work.
However, it was also determined that the
25% surcharge for such seamen should be
based not on their basic contractual wage
but on the legal minimum wage for Pan-
amanian crew members:

> The fixed sum salary is a valid method of
> compensation to maritime workers under
> Panamanian law as long as the fixed
> salary equals or exceeds the minimum
> wage for crew members aboard ships (59

Balboa cents per hour) plus 25% overtime
surcharge for all hours worked over for-
ty eight in one week.

647 F.Supp. at 1145.  *But cf. Pierre v.
Hess Oil Virgin Islands Corp.*, 624 F.2d
445, 447–49 (3rd Cir.1980) (seamen who re-
ceive a fixed monthly salary not entitled to
overtime pay under PLC).  In other words,
the *Vinuela* court concluded that a seaman
who receives a fixed monthly salary is not
entitled to receive any additional compensa-
tion for overtime work beyond his monthly
salary unless his salary is *less* than what
he would receive if he were paid the mini-
mum wage on an hourly basis with a 25%
surcharge for overtime hours.

The holding of the *Vinuela* court, which
was informed by submissions from experts
on Panamanian law, is persuasive.  Be-
cause plaintiffs have not established under
the *Vinuela* formula that they are entitled
to additional overtime pay beyond that stat-
ed in their pay vouchers, summary judg-
ment is denied on the claim for overtime
pay beyond the amounts listed in the pay
vouchers.  Summary judgment is granted,
however, on the sums listed on the pay
vouchers because defendants do not dis-
pute that plaintiffs are owed these sums.

■ The Challenger master also in-
cluded in each pay voucher a sum to com-
pensate for lost belongings.  Plaintiffs' in-
terrogatory answers detail losses of per-
sonal belongings in excess of the amounts
in the pay vouchers, and plaintiffs argue
that they are entitled to recover in full for
their losses.  Emmans responds that plain-
tiffs are not entitled to recover anything
for lost belongings, because "[t]he master
of the vessel was not given inventory lists
by the plaintiffs prior to the commence-
ment of the voyage.  This was a condition
precedent to the payment of any claim on
these items." [12]  Defendants, however,
have not identified the source of this "con-
dition precedent", nor have they cited any

---

**9.**  Plaintiffs' 3(g) Statement, Exhibit 12 (PLC Ar-
ticle 12).

**10.**  *Id.* at Exhibit 13 (PLC Article 31).

**11.**  *See* Plaintiffs' 3(g) Statement at ¶ 60.

**12.**  Emmans Affidavit at ¶ 6.

legal support for this assertion.[13] Given this failure of proof and the Challenger master's explicit provision for lost belongings in the pay vouchers, there is no genuine issue of material fact as to plaintiffs' entitlement to summary judgment for the amounts listed in the pay voucher for lost belongings. However, as to plaintiffs' recent affidavits detailing losses beyond those stated in the pay vouchers, factual issues remain as to whether plaintiffs indeed suffered these additional losses. Hence, summary judgment is denied on the sums claimed by plaintiffs for lost possessions in excess of the pay voucher amounts.

■ Finally, plaintiffs claim that they are entitled to interest, liquidated damages and attorney's fees. Under Article 169 of the PLC, in the case of delay or nonpayment of wages interest will accrue on the sums owed at the rate of ten percent, "from the time the obligation is enforceable."[14] The allowance of prejudgment interest here also accords with general principles of admiralty law in this country. *See, e.g., Chung, Yong Il v. Overseas Navigation Co.*, 774 F.2d 1043, 1056 (11th Cir. 1985) ("Although an admiralty court has discretion to grant or deny prejudgment interest, the general rule in admiralty cases is that prejudgment interest should be awarded absent peculiar circumstances"), *cert. denied*, 475 U.S. 1147, 106 S.Ct. 1802, 90 L.Ed.2d 346 (1986). In addition, PLC Article 170 sets forth a liquidated damages penalty that any judgment decreeing payment of wages must include an additional surcharge of ten percent of the amount awarded.[15] Defendants have presented no arguments why these provisions do not apply in the present case and accordingly summary judgment is granted on these claims.

■ Plaintiffs' request for summary judgment on the issue of attorney's fees, however, must be denied. An award of attorney's fees in an admiralty case seeking either maintenance or wages depends on a finding that the employer was "callous" or "recalcitrant." *See Vaughan v. Atkinson*, 369 U.S. 527, 530–31, 82 S.Ct. 997, 999–1000, 8 L.Ed.2d 88 (1962) (attorney's fees available in admiralty case seeking maintenance damages where employer's actions were callous and recalcitrant); *Lewis v. Texaco, Inc.*, 418 F.Supp. 27, 28 (S.D.N.Y.1976) (extending *Vaughan* to admiralty case seeking wages). The issue of "callousness" is ordinarily an issue for the factfinder, *see Incandela v. American Dredging Co.*, 659 F.2d 11, 15 (2d Cir.1981), and hence cannot be decided on this motion for partial summary judgment.

The motion for partial summary judgment is granted on 1) plaintiffs' claims for wages, termination compensation, vacation pay, lost belongings and overtime in the amounts listed in each seaman's pay voucher; and 2) plaintiffs' claims for interest and liquidated damages under the PLC. The motion is denied as to 1) plaintiffs' claims for lost possessions and overtime pay in excess of the amounts indicated in the pay vouchers; and 2) plaintiffs' claim for attorney's fees. Submit proposed judgment upon notice.

---

**13.** PLC Article 259 states that "[i]f a vessel should be lost due to shipwreck …, … the crew shall be entitled … to the payment in cash of the value of his personal effects lost or deteriorated in the shipwreck." Emmans Affidavit, Exhibit A (PLC Article 259). Although Article 259 goes on to state "[t]he master … must obtain from the seafarer a written declaration of the personal effects that he carries on board and their corresponding value," this provision on its face places a responsibility on the master rather than a limitation on the seaman's right to recovery.

**14.** Plaintiffs' 3(g) Statement, Exhibit 18 (PLC Articles 169 and 170).

**15.** *Id.*