In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3521

GENNADIY VOLODARSKIY, *et al.*,

*Plaintiffs-Appellants*,

*v.*

DELTA AIRLINES, INC.,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 11 C 00782 — **Edmond E. Chang**, *Judge*.

ARGUED APRIL 17, 2014 — DECIDED APRIL 10, 2015

Before MANION, SYKES, and TINDER, *Circuit Judges*.

SYKES, *Circuit Judge*. Several air travelers sued Delta Airlines, Inc., seeking compensation for themselves and a nationwide class of persons who were inconvenienced when their flights from airports located in the European Union were delayed for more than three hours or cancelled on short notice. The suit was filed in the Northern District of Illinois and

invokes the court's diversity jurisdiction under the Class Action Fairness Act, 29 U.S.C. § 1332(d) ("CAFA"). The claim arises under a consumer-protection regulation promulgated by the European Parliament setting standardized compensation rates ranging from €250 to €600 (depending on flight distance) for cancellations and long delays of flights departing from airports located within EU Member States. *See* Regulation 261/2004, 2004 O.J. (L 46) 1 (EC). A threshold question is whether this regulation (known as "EU 261") may be judicially enforced outside the EU. The district court held that it could not and dismissed the case.

We affirm. First, EU 261 is not incorporated into Delta's contract of carriage, so the claim is not cognizable as a breach of contract. The plaintiffs concede the point and press only a "direct" claim under the regulation. But a direct claim for compensation under EU 261 is actionable only as provided in the regulation itself, which requires that each EU Member State designate an appropriate administrative body to handle enforcement responsibility and implicitly limits judicial redress to courts in Member States under the procedures of their own national law.

## I. Background

On August 17, 2009, Illinois residents Gennadiy Volodarskiy, his wife, Oxana Volodarskaya, and their two minor children were passengers on a Delta flight departing from London's Heathrow Airport bound for Chicago's O'Hare International Airport. Their flight was delayed at Heathrow for more than eight hours. Delta neither informed them of the

delay prior to their scheduled departure time nor compensated them for it after the fact.

On November 29, 2010, New Jersey residents Richard Cohen and his wife, Inna, were passengers on a Delta flight departing from Paris bound for Philadelphia. They boarded the plane as scheduled, but Delta deboarded the passengers and canceled the flight nearly three hours after the appointed departure time. The Cohens arrived in Philadelphia more than 24 hours after their scheduled arrival time. Delta did not give notice of the cancellation prior to the scheduled departure or compensate the Cohens for the inconvenience.

The Volodarskiy family and Richard Cohen are the plaintiffs in this proposed class-action lawsuit seeking compensation from Delta under EU 261, which establishes common rules governing airline assistance and compensation in the event of boarding denials, cancellations, or long delays of flights departing from airports located within the EU.

More specifically, EU 261 applies to passengers "departing from an airport located in the territory of a Member State," EU 261 art. 3(1)(a), and establishes a fixed compensation schedule entitling inconvenienced passengers to a minimum of €250 and a maximum of €600 (depending on flight distance), *id.* art. 7(1), for cancellations that occur on short notice and without an offer of a rerouted flight within a specified time frame, *id.* art. 5(1).[1] Compensation is not owed for flights that

---

[1] EU 261 also applies to passengers "departing from an airport located in a third country to an airport situated in the territory of a Member State to

(continued...)

are canceled due to "extraordinary circumstances which could not have been avoided even if all reasonable measures had been taken." *Id.* art. 5(3).

So, for example, if an airline cancels a flight from Berlin to Rome—a distance of less than 1,500 km by air—without sufficient notice and in the absence of "extraordinary circumstances," the passengers are entitled to payment of €250 under the compensation structure set forth in Article 7 of EU 261. *Id.* art. 7(1)(a). The amount of compensation increases with the distance of the flight, to the maximum payment of €600. *Id.* art. 7(1). The airline can reduce the amount of compensation owed by 50% by offering rerouting that reduces the length of the delay to within certain minimums specified in the regulation. *Id.* art. 7(2).

The actual text of EU 261 requires airlines to pay compensation only for *canceled* flights, *see id.* art. 5, but the European Court of Justice has extended the entitlement to flight delays of more than three hours from the scheduled departure time, *see* Joined Cases C-402/07 & C-432/07, *Sturgeon v. Condor Flugdienst GmbH*, 2009 E.C.R. I-10923, I-10979–80.

EU 261 also requires air carriers to offer various forms of assistance to their passengers in the event of cancellations and

---

[1] (...continued)
which the Treaty applies," but only if the flight is operated by a "[c]ommunity carrier." Regulation 261/2004, 2004 O.J. (L 46) 1 (EC) art. 3(1)(b). The term "community carrier" is defined elsewhere in the regulation, *see id.* art. 2(c), and the parties agree that it does not apply to Delta.

certain long delays. Cancellations and delays of more than two hours require specified forms of assistance depending on flight distance and the length of the delay, *see* EU 261 art. 6, including reimbursement of airfare, a return flight to the first point of departure, rerouting to the traveler's final destination at the earliest opportunity, meals, and lodging, *id*. art. 8 & 9.

The regulation prescribes an enforcement regime for these entitlements. Most notably, it requires each Member State to designate a national administrative body to handle enforcement responsibilities. *See id*. art. 16; *id.* preamble ¶ 22. We will return to the regulation's enforcement provisions later. For now it's enough to note that the plaintiffs did not use the enforcement mechanisms available to them in the relevant EU Member States (the United Kingdom and France, where their departure airports are located). Instead, they sought relief under EU 261 in an American forum, no doubt to access the class-action device available under U.S. law.[2]

---

[2] Most European nations have not embraced the U.S.-style class action. *See* Rachael Mulheron, *The Case for an Opt-Out Class Action for European Member States: A Legal and Empirical Analysis*, 15 COLUM. J. EUR. L. 409, 415 (2009) ("Opt-out collective redress regimes are most definitely the exception, and not the rule, across the twenty-seven European Member States. Only three—Denmark, the Netherlands, and Portugal—have *some* version of an opt-out collective redress regime … ."); S. I. Strong, *Regulatory Litigation in the European Union: Does the U.S. Class Action Have a New Analogue?*, 88 NOTRE DAME L. REV. 899, 903 (2012) (noting "Europe's traditional antipathy toward … U.S. class actions"). Some nations do provide a form of "collective redress," although these aggregate litigation procedures vary. *See* Strong, *supra*, at 903 ("As it turns out, sixteen of the twenty-seven European Member States now provide for some form of large-scale

(continued...)

In February 2011 Volodarskiy and his family filed suit against Delta in the Northern District of Illinois seeking to represent a class of U.S. residents whose flights from airports in EU Member States were canceled or delayed for more than three hours. The sole cause of action in the original complaint was a claim for breach of contract; the plaintiffs contended that EU 261 was incorporated into Delta's international contract of carriage. That claim failed at the pleading stage. Ruling on Delta's motion to dismiss, the district court held that EU 261 was not explicitly incorporated into Delta's contract of carriage and any incorporation by implication would be barred by the preemption clause of the Airline Deregulation Act, 49 U.S.C. § 41713(b) ("ADA"). The judge dismissed the complaint but allowed the plaintiffs to replead.

The amended complaint dropped the contract claim, added Richard Cohen as a plaintiff, and alleged only a "direct" claim under EU 261. Delta again moved to dismiss, this time arguing that a direct claim under EU 261 is actionable only in a designated administrative body or a court in an EU Member State. Alternatively, Delta argued that *even if* a direct claim is

---

[2] (...continued)

litigation as a matter of national law … ."). *See generally* Mulheron, *supra*, at 415–27 (describing collective-redress procedures in a variety of European nations). Recently, the European Commission recommended the promulgation of more unified collective-redress procedures across member states, but these recommendations evince continued hostility toward the U.S.-style opt-out class action. *See* Commission Recommendation 2013/396/EU, art. 5, 2013 O.J. (L 201) 60, 64; *see also* Samuel Issacharoff & Geoffrey P. Miller, *Will Aggregate Litigation Come to Europe?*, 62 VAND. L. REV. 179, 192 (2009).

cognizable outside the legal systems of the EU, the ADA preempts it. Finally, Delta argued that prudential principles of international comity required the court to abstain and dismiss.

The judge agreed with the first of these arguments, holding that "EU 261 does not provide a private right of action that can be enforced in courts outside the EU." For completeness, however, the judge addressed—and rejected—Delta's preemption and comity arguments.[3] The judge then dismissed the amended complaint and terminated the case.

## II. Discussion

The plaintiffs do not challenge the dismissal of their breach-of-contract claim. To the contrary, they now concede that EU 261 is not incorporated into Delta's contract of carriage and abandon their breach-of-contract theory. What remains is a direct claim under EU 261, so the threshold issue on appeal is whether the regulation may be judicially enforced outside the courts of EU Member States. The parties agree that EU 261 creates, in the parlance of U.S. law, a private right of action; they disagree about *where* that action can be maintained.

---

[3] Delta also argued, though only in a footnote, that the plaintiffs' claim is preempted under the Montreal Convention, a multilateral treaty governing international air transportation. The district judge found this argument underdeveloped but addressed it anyway and rejected it. Delta has not raised the Montreal Convention on appeal. We have an amicus brief from other international air carriers raising the Convention as an alternative basis to affirm. Because we're affirming on another ground and Delta does not rely on the Convention, we do not address this argument.

It's hard to classify this dispute doctrinally. It has shadings of jurisdiction, venue, and choice-of-law, but it doesn't fit neatly into any of these doctrinal baskets. We note for starters that there are no jurisdictional concerns; CAFA supplies subject-matter jurisdiction. The parties haven't framed the issue as a conflicts-of-law question; they make no effort to analyze the case under Illinois choice-of-law rules.[4] *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) (federal courts sitting in diversity apply the forum state's choice-of-law rules to determine the applicable substantive law). Instead, they simply assume that EU law applies and argue about the proper interpretation of the regulation.

Forum non conveniens might have had a role to play here. That doctrine holds that a case may be dismissed if the court "determines that there are 'strong reasons for believing it should be litigated in the courts of another, normally a foreign, jurisdiction.'" *Fischer v. Magyar Államvasutak Zrt.*, 777 F.3d 847, 866 (7th Cir. 2015) (quoting *Abad v. Bayer Corp.*, 563 F.3d 663, 665 (7th Cir. 2009)). One good reason to dismiss a case based on forum non conveniens is to avoid the administrative or legal complications of interpreting and applying a foreign country's law. *Id.* at 866–68. Relatedly, the doctrine permits dismissal in deference to a foreign sovereign's superior competence and public interest in adjudicating its own law. *Id.* at 870–71. These

---

[4] The suit is obviously doomed if the forum state's law controls. Without a viable breach-of-contract theory, there is no cognizable basis in Illinois law for the plaintiffs' claim.

principles are implicated here, but Delta's dismissal motion was not premised on forum non conveniens.[5]

Taking the case as the parties have litigated it, Delta's main argument is that the enforcement provisions of EU 261—either on their own or in conjunction with background principles of EU treaty law—limit compensation claims to designated administrative bodies or courts within EU Member States. The district judge agreed and dismissed the case on that basis.[6]

On appeal the plaintiffs attack the judge's interpretation of the enforcement language in EU 261. Delta defends it of course. Our review is de novo. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

EU 261 does not have an explicit forum-limitation clause. But it also doesn't clearly empower tribunals in nonmember countries to enforce the compensation system. And the text and structure of the regulation indicate that passenger claims

---

[5] In their appellate briefs, the plaintiffs cite a few cases involving international choice-of-law questions and dismissal motions based on forum non conveniens. *See, e.g.*, *Kalmich v. Bruno*, 553 F.2d 549 (7th Cir. 1977) (choice of law); *Kalmich v. Bruno*, 404 F. Supp. 57 (N.D. Ill. 1975) (same); *see also Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, 145 F.3d 481 (2d Cir. 1998) (forum non conveniens); *Brooks v. Hess Oil V.I. Corp.*, 809 F.2d 206 (3d Cir. 1987) (choice of law). Because Delta hasn't raised forum non conveniens or argued that Illinois law controls, these cases are unhelpful here.

[6] As we've explained, Delta also advanced arguments based on ADA preemption and comity, but the judge said he would not dismiss on either ground.

for compensation due from air carriers are limited to administrative bodies and courts in EU Member States.

The operative text of EU 261 prescribes two main avenues of enforcement, which are summarized in this aspirational language in the preamble:

> Member States should ensure and supervise general compliance by their air carriers with this Regulation and designate an appropriate body to carry out such enforcement tasks. The supervision should not affect the rights of passengers and air carriers to seek legal redress from courts under procedures of national law.

EU 261 preamble ¶ 22. The actual enforcement provisions are found in Article 16, entitled "Infringements." In relevant part, that article provides:

> 1. *Each Member State shall designate a body responsible for the enforcement of this Regulation as regards flights from airports situated on its territory* and flights from a third country to such airports. Where appropriate, this body shall take the measures necessary to ensure that the rights of passengers are respected. …

> 2. Without prejudice to Article 12, *each passenger may complain to any body designated under paragraph 1, or to any other competent body designated by a Member State, about an alleged infringement of this Regulation at any airport situated on the territory of a Member State* or concerning any flight from a

third country to an airport situated on that territory.

*Id*. art. 16(1)–(2) (emphases added).

The "body" referred to in both the preamble and in Article 16 is an administrative entity designated by each Member State, known as a "National Enforcement Body" or "NEB." According to a report prepared for the European Commission, most NEBs focus on investigations and direct enforcement against airlines rather than assisting individual passengers in obtaining more formal legal redress. *See* Steer Davies Gleave, *Evaluation of Regulation 261/2004*, THE EUROPEAN COMMISSION, 75–76, 81 (Feb. 2010), http://ec.europa.eu/transport/themes/passengers/studies/doc/2010_02_evaluation_of_regulation_2612004.pdf. So passengers also seek relief for infringements of their EU 261 rights in civil courts, often the equivalent of our small-claims courts. *See id*. at 78–82. Many provisions of EU law are immediately enforceable in the judicial fora of Member States (subject to the procedural and venue rules of each nation) regardless of whether the Member State has independently implemented the provision. This background principle of EU law is known as "direct effect." *See The Direct Effect of European Law*, EUROPA, http://eur-lex.europa.eu/legal-content/EN/TXT/HTML/?uri=URISERV:114547&rid=1 (Sept. 22, 2010) (citing Case 26/62, *Van Gend en Loos v. Nederlandse Administratie der Belastingen*, 1963 E.C.R. 1); *see also* Case C-253/00, *Antonio Muñoz y Cia SA & Superior Fruiticola SA v. Frumar Ltd. & Redbridge Produce Mktg. Ltd.*, 2002 E.C.R. I-7289, I-7320–21 ("[R]egulations have general application and are directly applicable in all Member States. … [R]egulations

operate to confer rights on individuals which the national courts have a duty to protect." (citation omitted)).

Another provision of EU 261 specifies that an air carrier's obligations to passengers "may not be limited or waived." EU 261 art. 15(1). If a contract of carriage includes a purported waiver or limitation of EU 261 rights, or if an airline fails to properly inform a passenger of his rights "and for that reason [the passenger] has accepted compensation which is inferior to that provided for in this Regulation," then the passenger "shall still be entitled to take the necessary proceedings before the competent courts or bodies in order to obtain additional compensation." *Id*. art. 15(2).

The district court held that when read together, these provisions establish that direct actions to enforce EU 261 rights are limited to courts in EU Member States. We agree. To begin, the language we've quoted from Paragraph 22 of the preamble summarizes the two important features of the regulation's enforcement regime. First, Paragraph 22 mentions the obligation of each EU Member State to designate an administrative body to ensure compliance and enforcement of the regulation. (These are the NEBs, though EU 261 doesn't specifically refer to them as such.) Second, Paragraph 22 clarifies that the existence of the administrative-enforcement system "should not affect the rights of passengers and air carriers to seek legal redress from courts under procedures of national law." *Id.* preamble ¶ 22.

The plaintiffs insist that this reference to "courts" and the "procedures of national law" means that direct claims under EU 261 can be brought in the courts of *any* country. That

reading ignores the broader context of this passage. As we've noted, the first sentence of Paragraph 22 simply notes the duty of Member States to designate an administrative body (an NEB) to "supervise general compliance" and "carry out such enforcement tasks" in order to ensure airlines are meeting their obligations under EU 261. The second sentence makes it clear that the enforcement authority of the NEBs doesn't affect the rights of passengers or carriers to seek redress in courts under national law. In other words, the administrative enforcement of EU 261 via a system of NEBs is not meant to displace the authority of courts within Member Nations to adjudicate infringement claims under the procedures of their own national law.

But does this language *also* mean that judicial enforcement of EU 261 lies *exclusively* in the courts of EU Member Nations? Delta argues that it does, when read together with the enforcement provisions of the regulation and in light of background principles of EU treaty law.

As we've noted, Article 16 provides that passengers may look to two different fora to resolve infringement claims under EU 261: (1) an administrative entity in a Member State designated as the "body responsible for the enforcement of this Regulation" (the NEBs); and (2) "any other competent body *designated by a Member State*." EU 261 art. 16 (emphasis added). By implication, the phrase "any other competent body designated by a Member State" necessarily includes the courts of EU Member States. Paragraph 22 of the preamble and the direct-effect principle of EU law make that much clear. So the enforcement language in EU 261 tells passengers to take their

infringement claims to an administrative or judicial forum within or designated by the relevant EU Member State for that purpose. No one argues that the United Kingdom, France, or any other EU Member State has "designated" the U.S. courts as a "competent body" for the enforcement of EU 261 claims.

The plaintiffs counter that Article 15 of the regulation refers more generally to "proceedings before the competent courts or bodies." *Id.* art. 15(2). In their view this language suggests that an enforcement action under EU 261 may be brought in a competent court anywhere in the world. That's an implausible interpretation. Recall that Article 15 prohibits the waiver or limitation of EU 261 rights by contract. *Id.* art. 15(1). It also states that if an airline's contract of carriage purports to waive or limit the passenger's EU 261 rights, or if an airline fails to inform passengers of their rights and a passenger accepts inferior compensation as a result, the passenger "shall still be entitled to take the necessary proceedings before the competent courts or bodies in order to obtain additional compensation." *Id.* art. 15(2).

The plaintiffs read this reference to "competent courts or bodies" as authorizing private enforcement actions in *any* competent court—either within *or* outside the EU. We think that's more weight than Article 15(2) can bear. When read together and harmonized with the more limited enforcement scheme set forth in Article 16(2), the phrase "competent courts or bodies" as used in Article 15(2) is best understood as a reference to competent courts or bodies within or designated by an EU Member Nation, as authorized by Article 16.

This interpretation of EU 261 accords with several background principles of EU law. Take the principle of "subsidiarity":

> Under the principle of subsidiarity, in areas which do not fall within its exclusive competence, the Union shall act only if and in so far as the objectives of the proposed action cannot be sufficiently achieved by the Member States, either at central level or at regional and local level, but can rather, by reason of the scale or effects of the proposed action, be better achieved at Union level.

Consolidated Version of the Treaty on European Union art. 5, Mar. 30, 2010, 2010 O.J. (C 83) 13, 18. Determining the proper forum for court actions has traditionally been left to EU Member States:

> The [European Court of Justice] has consistently held that, in the absence of Community rules governing the matter, it is for the domestic legal system of each Member State to designate the courts and tribunals having jurisdiction and to lay down the detailed procedural rules governing actions for safeguarding rights which individuals derive from Community law.

Case C-268/06, *Impact v. Minister for Agriculture & Food & Others*, 2008 E.C.R. I-2483, I-2550–51 (collecting authority). The authority to designate the proper fora for enforcement actions under EU 261 resides with EU Member States in accordance with their own national law.

Invoking the principle of EU law known as "legal cer-
tainty," Delta also argues that divergent interpretations of
EU 261 by courts in nonmember countries would undermine
the EU's attempt to harmonize the law within its jurisdiction.
Legal certainty is a "fundamental principle of Community law
which requires, in particular, that rules should be clear and
precise, so that individuals may ascertain unequivocally what
their rights and obligations are and may take steps accord-
ingly." Case C-344/04, *Int'l Air Transp. Ass'n v. Dep't for Transp.*,
2006 E.C.R. I-403, I-472.

The European Court of Justice ("ECJ") plays an important
role in ensuring that EU laws are applied uniformly across
Member States. *See id.* at I-461 ("The main purpose of the
jurisdiction conferred on the [ECJ] … is to ensure that Commu-
nity law is applied uniformly by national courts."); *Court of
Justice of the European Union*, EUROPEAN UNION, http://europa.
eu/about-eu/institutions-bodies/court-justice/index_en.htm
(last visited April 10, 2015) ("The Court of Justice interprets EU
law to make sure it is applied in the same way in all EU
countries."). The ECJ is empowered to make preliminary
decisions on the validity and interpretation of EU laws. *See*
Consolidated Version of the Treaty Establishing the European
Community art. 234, Dec. 24, 2002, 2002 O.J. (C 325) 33, 127.
Any court or tribunal of a Member State can ask the ECJ for a
ruling, and the ECJ is required to entertain these requests
"[w]here any such question is raised in a case pending before
a court or tribunal of a Member State against whose decisions
there is no judicial remedy under national law." *Id*. at 127–28.

Because U.S. courts cannot certify questions of EU law to the ECJ, Delta argues that interpreting EU 261 to allow direct claims in nonmember courts would undermine the consistent application of the regulation in violation of the principle of legal certainty. We think this argument proves too much—it would foreclose *any* decision of a U.S. court applying EU law. We're not willing to go quite that far. Still, asking a U.S. court to wade into an area of EU law that is fraught with uncertainty risks offending principles of international comity. That is particularly true when the claim created by foreign law is alien to our own; our domestic law has no cause of action analogous to EU 261. As we've noted, however, these concerns can be more generally addressed under the auspices of the doctrine of forum non conveniens. *See Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008) (recognizing that "the avoidance of unnecessary problems … in the application of foreign law" weighs in favor of a dismissal under forum non conveniens).

Rather than dictating the result here, the principles of legal certainty and subsidiarity serve to reinforce our interpretation of the text of EU 261 and the limited scope of its enforcement regime. Accordingly, for the foregoing reasons, we conclude that EU 261 is not judicially enforceable outside the courts of EU Member States.[7] The suit was properly dismissed.

AFFIRMED.

---

[7] Dismissal was appropriate on this ground alone, so we need not address Delta's alternative argument based on ADA preemption.